STEPHENS *v.* FOLLETT *et al.*

*(Circuit Court, D. Minnesota.  October 13, 1890.)*

1. NATIONAL BANKS—INDIVIDUAL LIABILITY OF SHAREHOLDERS.
    One who subscribes and pays for a specified number of shares of a "proposed increase" of the capital stock of a national bank, which increase is in fact never issued, and to whom the bank officials transfer, instead, old stock of the bank without his knowledge or consent, is not a "shareholder" within the meaning of Rev. St. U. S. § 5151, imposing individual liability on the shareholders for the debts of national banks.

2. SAME—ESTOPPEL.
    The fact that the subscriber for the new shares received a dividend on the old shares so transferred to, him does not estop him from denying his liability as a shareholder, where such dividend was received in the belief that it was paid to him by virtue of his subscription to the new stock.

At Law.

This suit was tried by the court, a stipulation waiving a jury being filed. The action is brought to recover an assessment made by the comptroller of the currency on the stockholders of the Fifth National Bank of the city of St. Louis, which went into liquidation November 7, 1887, and of which the plaintiff was appointed receiver.  The assessment was 100 per cent. of the par value of the shares.  The complaint alleges that Stephen A. Gardner held and was the owner of 241 shares of the capital stock of said bank, of the par value of $100 each, amounting to $24,100, and that said Gardner died testate March 11, 1889, and that the defendants are the duly-qualified executors of his last will and testament, and that by reason thereof the plaintiff is entitled to recover $24,100, with interest from June 22, 1889.  The defendants admit that Gardner owned 115 shares of the stock, but deny that he owned any more; and further, in substance, set up, that if any other or greater amount than 115 shares stands in his name on the books, the entries thereof are fraudulent and unauthorized, and unknown to said Gardner until after the failure of the bank and the appointment of a receiver.  The following facts are stipulated, and the evidence of the receiver and other witnesses introduced do not change them.  The receiver testifies that when he took charge of the bank he found Gardner a subscriber for 100 shares of the proposed increase of the capital stock, but he never regarded him as a subscriber to the new stock, and the books of the bank do not show that he received new stock.

The following are the findings of fact and conclusions of law:

"This cause, being regularly on the calendar for trial at the general term of this court sitting at St. Paul, Minnesota, commencing on the 9th day of

December, 1889, and under the stipulation on file herein, waiving a jury, and agreeing to the trial hereof by this court sitting without a jury, having come regularly on for trial before me on the 5th day of May, A. D. 1890, and having been then tried and submitted to this court, sitting without a jury, for its decision, William Ely Bramhall, Esq., then and there appearing for and in behalf of plaintiff, and McNeil V. Seymour, Esq., and John M. Gilman, Esq., having then and there appeared for and on behalf of the defendants: Now, after having fully heard said counsel, and after full and due consideration and deliberation, I find as facts, in addition to those contained in the stipulation and agreement in writing between the parties hereto, dated on the 19th day of February, 1890, and which was filed in the office of the clerk of this court on February 20, 1890, as follows:

"*First.* That at the time said Stephen Gardner subscribed to the proposed increase of the capital stock of the Fifth National Bank of St. Louis, in 1886, he was about 80 years of age, and was, and had been for some time prior thereto, and continued afterwards to be, in very feeble health.

"*Second.* That at the time said officers of said bank, referred to in said stipulation, applied to said Stephen Gardner, and by its circular referred to in the said stipulation, invited him to subscribe to the increase of the capital stock of said bank, as well as for a long time prior thereto, said bank was, and has ever since continued to be, wholly insolvent, and was known to be insolvent by the officers of said bank at the time of sending said circular, and at the time of receiving said Stephen Gardner's written subscription to said proposed increase of stock, and at the time said sum of ten thousand dollars was received by said bank.

"*Third.* That said Stephen Gardner paid said sum of ten thousand dollars to said bank for one hundred shares of the proposed increase or new issue of the capital stock of said bank, which he supposed would be made on the 1st day January, 1887; that said bank, upon receiving said sum of money, paid a portion thereof to the president of said bank, and the balance of said sum to one of the directors, and in return therefor permitted said président and director to surrender to said bank one hundred shares of the original capital stock of said bank, and thereupon, and in lieu thereof, said bank did issue a certificate for one hundred shares of said original stock in the name of Stephen Gardner, and sent said certificate to said Stephen Gardner at Hastings, Minnesota, where he resided; that there was nothing on the face of the certificate so issued and received by said Gardner to show that it was not one hundred shares of the proposed increase of stock for which said Stephen Gardner had subscribed, and for which he had paid his money; that the letter in which said certificate was inclosed, taken in connection with prior correspondence, indicated, and was intended by the officer of the bank who wrote it to indicate, that the said certificate represented the new issue of said stock which was proposed to be made, and said Stephen Gardner believed that such certificate did in fact represent the new issue of the capital stock of said bank for which he had subscribed, and had no knowledge or intimation to the contrary until long after the failure of said bank, and long after the appointment of the plaintiff herein as its receiver.

"*Fourth.* That when the dividend mentioned in the stipulation was received by said Stephen Gardner, he believed it was a dividend upon the stock of the proposed increase which he supposed he had in said bank, and never learned or thought to the contrary until long after the failure of said bank and the appointment of the plaintiff as receiver.

"*Fifth.* That Exhibit B, attached to the deposition taken herein, is the list of shareholders of said bank, certified to the comptroller of the currency on the 1st Monday of July, 1887, by said bank. But in first preparing and entering upon the book kept for that purpose the list of shareholders on the 1st

Monday in July, 1887, Mr. Gardner was entered as the owner of 115 shares only, and at some subsequent date the figures were changed from 115 to 215. As to when this alteration was made, there is no satisfactory direct testimony, but the said number of shares (215) ever afterwards, as changed, continued to stand in his name.

"*Sixth.* That, as soon as said Stephen Gardner learned that he had not received the stock for which he had subscribed, he promptly through his agent, interviewed said receiver, and, though no formal claim was presented, the repayment of said sum of ten thousand dollars was demanded and claimed; that said receiver stated that he could not entertain such claim; that said agent asked said receiver if he would deem said claim presented. Said receiver replied that he would treat said claim as presented, but would reject the same.

"*Seventh.* That in writing the letters signed by Charles Espenschied, and attached to the stipulation, said Charles Espenschied did so at the request of said Stephen Gardner.

"As conclusions of law I find that the plaintiff, as receiver of the said Fifth National Bank, is entitled to recover of the said defendants, as the executors of the last will and testament of Stephen Gardner, deceased, the sum of eleven thousand five hundred (11,500) dollars, with interest thereon at the rate of seven per cent. per annum from June 22, 1889, together with the costs and disbursements herein, to be taxed by the clerk and entered in the judgment herein, to be paid out of the estate of said Stephen Gardner, deceased, and that plaintiff is not entitled to any other or further relief herein. Therefore it is ordered that judgment be entered in favor of said plaintiff, as such receiver, and against the said defendants, as such executors, for $11,500, with interest at seven per cent. per annum from June 22, 1889, and for the costs and disbursements herein, to be paid out of the estate of the said Stephen Gardner, deceased.

*Cole, Bramhall & Morris,* for plaintiff.
*Stringer & Seymour, M. D. Munn,* and *J. M. Gilman,* for defendants.

NELSON, J. The defendants do not attempt to escape liability for the reason that Gardner purchased shares of stock through misrepresentation of the vendor or his agents; nor is there any suggestion by the receiver in the pleadings, or any proof, that they are liable because the testator was a subscriber to the increase of the capital stock of the bank, although his name appears on the list of subscribers for 100 shares. The suit is brought to recover an assessment made by the comptroller upon the defendants' testator, as an owner of the original stock issued to subscribers when the bank was first organized, and in order to recover the plaintiff must prove that the testator was the owner of the stock which is entered in the bank-books in his name. The presumption is, on the stipulated facts, as his name is registered in the stock book as a stockholder to the amount of 215 shares, that he was the owner thereof, particularly when he held certificates for such stock, duly issued and signed by the proper bank officers; but these facts are not conclusive of ownership. Such *prima facie* case throws upon the defendants the *onus* of rebutting the presumption.

It is conceded that 115 shares of the capital stock were owned by Gardner, but it is claimed that they are not liable for an assessment upon the 100 shares registered in his name, and for which a certificate was issued January 4, 1887. The manner in which this certificate for 100 shares

issued appears in the stipulated facts, and the question presented is, did the testator purchase this stock, or has he consented to the transfer of the stock registered in his name? A purchase of stock in an organized bank from one who is a stockholder required the mutual assent of the vendor and vendee to the contract. If a lack of mutual consent is shown, and there is an absence of contract between the parties that the testator should purchase the 100 shares of old stock, and thus become liable as a stockholder, he was not a stockholder or owner, within the meaning of the national bank laws,[1] imposing individual liability, although the stock was transferred and registered in his name. The criterion of liability is whether any act has been done by which the corporation was forced to receive the testator as a stockholder. In the face of the entry and transfer of the stock and issue of a certificate, the defendants may introduce evidence to show that the entry is false, and the certificate falsely issued. The testimony shows that the bank was in a sickly condition, and the transfer from the president and one of the directors of their stock was unauthorized. The sale or transfer of stock of a national bank is not governed by different rules from those which apply to other incorporated companies. Proof must be made of the assent of the parties thereto. They must have assented to the transfer, as shown by the bank-books, to make the testator a stockholder, and subject to the onerous liability which the national bank act imposes on stockholders. The proof is clear that the defendants' testator subscribed for and sent his money to the bank to pay for 100 shares of the proposed increase of the capital stock of the bank, and the certificate sent was old stock transferred to him without his knowledge or consent. Such a transaction cannot be upheld. A transfer of stock under such circumstances, without the knowledge of the person to whom it is transferred, does not make him liable as a shareholder. He must be held out to the public as a shareholder, with his knowledge of the fact. It is claimed that this defense cannot be set up on a suit brought by the receiver to recover an assessment made, in order that the creditors of the bank may obtain satisfaction; and it is said that creditors of the bank would suffer by such a rule. Injurious consequences to creditors, which may happen after such an authorized transfer of stock, cannot make the defendants responsible on a contract which their testator never made and had nothing to do with. There can be no estoppel unless defendants' testator assented to the transfer of the stock. He had no knowledge that he was registered on the stock-book as the owner of 100 shares of the original stock of the bank, which had been transferred to him by Overstoltz, the president, and Rosenthal, a director; and there were no circumstances disclosed in the transaction between him and the bank, when he subscribed for 100 shares of the increase to the stock and paid for it, that put him upon an inquiry to ascertain whether the certificate issued represented the stock he subscribed for or old stock fraudulently transferred. He had purchased no stock from any stockholder, but had responded favorably to

[1] Rev. St. U. S. § 5151.

the circular sent him for an increase of the capital stock of the bank, and had paid for 100 shares of the new stock which he was anxious to get. A certificate dated about the time the president of the bank informed him the new increase stock would probably be issued was sent, properly signed, and there was nothing upon its face to indicate it was not the new stock subscribed for. A dividend was declared and paid upon the original stock June 7, 1887, and it is urged that the testator, having received it, is estopped from now asserting that he did not own these shares. While a dividend might, if the person in whose name the stock is registered receive it, tend to establish ownership, still receipt of a dividend is not conclusive proof that he is a stockholder within the law imposing individual liability. The evidence taken, in addition to the facts stipulated, does not change the *status* of the case.

In the case of *Keyser* v. *Hitz*, 133 U. S. 139, 10 Sup. Ct. Rep. 290, the court holds that a transfer of stock in a bank to a person without his knowledge or consent does not, of itself, impose upon the transferee the liability attached by law to the position of shareholder in the association; but if the transferee does any act approving or acquiescing in the transfer, or in any way ratifies it, or accepts any benefit arising from the ownership of such stock, he becomes liable to be treated as a shareholder, with such responsibilities as the law imposes in such cases. Gardner did not know, when a dividend was paid to him upon 215 shares, that such an amount of old stock was entered in his name, for he never had purchased or authorized the transfer of the 100 shares which appear in the books as transferred to him. He therefore never accepted any benefit arising from the ownership of such stock. It is said that Gardner waived his right to complain by not returning the dividend, or offering to return it, and cannot defeat the assessment upon the 100 shares. This failure to tender back the dividend does not, under the circumstances, prevent the defense urged.

After full consideration, I am of the opinion that the defendants must pay the assessment of 100 per cent. of the par value upon 115 shares of stock only, and judgment must be entered for $11,500, with interest at 7 per cent. from June 22, 1889; and it is so ordered.