WILLIAMS v. AMERICAN NAT. BANK OF ARKANSAS CITY, KAN., et al.

(Circuit Court of Appeals, Eighth Circuit. February 7, 1898.)

No. 920.

1. CERTIFICATE OF STOCK IN NATIONAL BANK—EVIDENCE OF PURPOSE OF ISSUE.
   A certificate of stock in a national bank, though in due form, may be shown aliunde to have been issued to the apparent stockholder solely as collateral security for money loaned.

2. ACTION AGAINST BANK—ULTRA VIRES AS DEFENSE.
   It is no defense to an action against a national bank for money had and received that the collateral security it gave to plaintiff was issued without authority of law.

In Error to the Circuit Court of the United States for the District of Kansas.

The plaintiff in error, a citizen of the state of Texas, brought an action against the American National Bank of Arkansas City, Kan., and the receiver thereof, to recover the sum of $28,250, alleged to be owing to her by said bank on contract. The petition alleges that on the 15th day of April, 1890, the defendant bank, through its president and cashier, entered into a verbal contract with her by which she loaned the bank the sum of $28,250 on the promise of the bank to pay her interest at the rate of 12 per cent. per annum, payable semiannually, and further agreeing that it would pay to her the money so loaned upon 30 days' notice; that in pursuance of said agreement the bank took and used her money, and afterwards paid interest thereon at the rate of 12 per cent. per annum up to the 15th day of October, 1890; that on the 8th day of December, 1890, she made demand for payment, which was refused, and that on the 9th day of December, 1890, the bank was insolvent, whereupon the comptroller of the currency placed said bank in the hands of a receiver, and the receiver, on demand, failed and refused to pay to her said money.

The answer interposed the defenses that the officers of the bank were without authority to make the contract claimed by plaintiff: and, second, that the transaction was a purchase of stock of the bank by the plaintiff, taken in payment of money placed on deposit by her with the bank, for which purchase the bank issued and delivered to her a certificate of stock. The answer also interposed a counterclaim against the plaintiff as a stockholder in said bank for an assessment of 75 per cent., authorized by the comptroller of the currency. This

counterclaim was abandoned in the court below. The reply alleged that the stock in question was taken and held by the plaintiff as collateral security for the said sum of money sued for, and that said stock was not registered 'on the books of the bank in her name with her knowledge or consent.

The trial was had before a jury. The plaintiff's evidence tended to establish that prior to her marriage she was a school teacher in the state of Texas. That she accumulated some money, which was invested in real estate in the city of Austin, Tex., and which proved profitable. Her husband, who was a dealer in cattle, induced her to sell her land, and invest the proceeds in cattle, which investments largely added to her profits. Speculations in cattle brought her husband to Arkansas City, Kan., where she followed him in 1889. The proceeds of sales of cattle belonging to her she deposited, from time to time, in the defendant bank, until, about January, 1890, her deposits amounted to the sum in controversy. Prior to the arrangement in controversy the bank was paying her on stated balances of said deposits 10 per cent. interest per annum. That about the 1st of January, 1890, the cashier of the bank, knowing its embarrassed condition, to induce her to let her money remain with the bank, persuaded her to believe that a certificate of stock in the bank would be a better security for the money than a certificate of deposit; and that the bank would pay her 12 per cent. interest per annum thereafter on her money. That at first she demurred to this proposal, stating to the cashier that she was liable at any time to leave that place to rejoin her husband in Texas, and when she should go she desired to withdraw her money from the bank. Thereupon the bank officers assured her that they would pay her 12 per cent. interest thereon, and pay over to her the principal at any time on 30 days' notice. That she took the certificate of stock as security to the extent of 250 shares, representing $100 per share, aggregating $25,000 of stock, and the remainder was made up on the statement of the cashier of a surplus on hand upon said shares of $2,650, and a reserve fund of $600. Thereafter the bank issued to her the certificate of stock, expressing on its face that it was for her separate use, and the bank thereafter made payment to her of interest at the rate of 12 per cent. per annum. Her testimony further tended to show that she was quite unfamiliar with such business transactions, that the officers of the bank commanded her fullest confidence, and she relied implicitly upon their advice and suggestions in the matter. Her testimony further was that, when she demanded of the bank her money in the following December, the president of the bank, in further recognition of her right to the money in the bank, and to appease her, turned over to her as additional collateral security certain shares of stock owned by him in another private corporation at Arkansas City. On cross-examination the defendant was indulged by the court to put in evidence some letters written to the bank (and perhaps to other parties) by the plaintiff, which tended to show some conflict with statements made in her oral testimony. On the trial in chief she offered as a witness one G. L. McCluney, who was present in the bank at the time of the alleged arrangement between the plaintiff and the cashier of the bank. The offer made was to show by this witness that he heard the conversation, and to corroborate her testimony in respect thereof. On objection of defendant, his testimony was excluded. At the conclusion of plaintiff's testimony the court, on motion of defendant, instructed the jury to return a verdict for defendant, which was done, and judgment entered for defendant.

W. E. Stanley, R. R. Vermilion, J. C. Pollock, and J. T. Lafferty, for plaintiff in error.

Samuel R. Peters (J. C. Nicholson, on the brief), for defendants in error.

Before SANBORN and THAYER, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge, after stating the case as above, delivered the opinion of the court.

It must be assumed from the argument of counsel that the circuit court regarded the certificate of stock issued to the plaintiff in the

nature of a written contract between the parties, the terms of which could not be varied, nor the legal effect thereof avoided, by parol testimony; and that plaintiff was estopped from controverting its apparent character as establishing her status as a stockholder in the bank. On no other theory is it apparent why the learned judge who heard this case directed the verdict for defendant. Evidence tending to show that a deed absolute on its face, or an assignment of a note without qualification, was made to the grantee or assignee in fact only as a mortgage or security to secure the payment of a sum of money owing by the grantor or assignor to the grantee or assignee, has long been held to be admissible. In McMahon v. Macy, 51 N. Y. 155, the referee refused to entertain evidence tending to show that the apparent stockholder held the stock as collateral security. The court said:

"In this he erred. It is always competent to show that an assignment or conveyance, absolute in form, was only intended as a security. There is nothing in any statute which makes the books of the company incontrovertible evidence of ownership of stock. A person may be the absolute legal and equitable owner of stock without any transfer apparent upon the books."

Instruments of writing expressing on their face a mere sale of property, specifying the articles sold, and acknowledging receipt of payment, is in the nature of a bill of parcels, and, as between the parties, is always open to parol evidence to show the real terms upon which the agreement of sale was made. Hazard v. Loring, 10 Cush. 268; Caswell v. Keith, 12 Gray, 351; Shaw v. Wilshire, 65 Me. 492; Grant v. Frost (Me.) 13 Atl. 881. The law does not invest a certificate of stock in a national bank with such sanctity as to give it immunity against such general rules. It was expressly held in Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, that a certificate of stock might be shown aliunde to have been taken and held as collateral security. The court said:

"Though issued in form, it was only issued in a qualified sense to subserve a specific purpose by way of collateral security for a limited period, and was returnable to the company when that purpose should be accomplished. It seems to us that the Seligmans, in taking and holding the stock, held it merely in trust by way of collateral security for themselves and others."

The court further observed:

"We do not know of any iron rule of law which would prevent them from showing this contract relation between them and the company. It is the origin and foundation of their whole connection with it. The sufficiency of the evidence to control their status towards the company is another thing. Its competency seems to us free from doubt. * * * J. and W. Seligman are mere trustees or custodians of it for a special purpose; that purpose being collateral security."

There is no evidence in this record showing that any transfer had been made on the stock register of the bank to the plaintiff, nor that she had participated in any stockholders' meeting, or in any declared dividends. On the contrary, her testimony was that she never authorized any such transfer, nor had any knowledge thereof. Without her knowledge and consent, no action of the bank officers could create an estoppel against her, or render her liable as a stockholder as between her and the bank. Stephens v. Follett, 43 Fed. 842;

Keyser v. Hitz, 133 U. S. 138, 10 Sup. Ct. 290; Burgess v. Seligman, supra. While there may have been acts by the plaintiff—such as statements in some of her letters—inconsistent with some statements made in her testimony at the trial, they were not so conclusive as to warrant the court in pronouncing judgment thereon. Their probative force lay within the exclusive province of the jury, for the reason that they were debatable in character. It follows that it was likewise error to exclude the testimony of the witness McCluney.

The plea of ultra vires interposed against the contract declared on is not tenable. The plaintiff's action, in its essence, is not predicated upon, nor is it for the enforcement of, a contract for stock. In effect, the action is for money had and received. It is to recover the amount of money deposited and loaned by the plaintiff with and to the bank. The bank owes the plaintiff for the money left by her with it, independent of the certificate of stock. Such certificate, according to her contention, having been issued by the bank merely as collateral security for the money received from the plaintiff, it is a matter of entire indifference whether that certificate of stock be with or without value, or invalid in law for the want of power on the part of the bank or authority of the cashier to issue it as collateral security for a loan of money made to it. The plaintiff in the petition tenders back to the bank the certificate of stock, and demands her money. It is no defense to an action for money had and received, based upon a good consideration, both in law and morals, for the bank to say that the collateral security it put up with the plaintiff was issued without authority. This proposition so stands to reason and justice as not to require any authorities for its support. 4 Thomp. Corp. par. 5258; Sioux City Terminal Railroad & Warehouse Co. v. Trust Co. of North America, 82 Fed. 125.

The judgment of the circuit court is reversed, and the case is remanded for further proceedings in conformity with this opinion.