AMERICAN NAT. BANK OF ARKANSAS CITY, KAN., et al. v. WILLIAMS.

(Circuit Court of Appeals, Eighth Circuit. April 16, 1900.)

No. 1,321.

1. NATIONAL BANK—LOAN—STOCK AS COLLATERAL SECURITY.

Plaintiff sued the receiver of a national bank for money loaned the bank for which bank stock had been given as collateral security. The receiver defended on the theory that the transaction was a purchase of the stock. At the trial, plaintiff and another testified positively that plaintiff contracted for the loan with the bank cashier on the terms claimed by plaintiff. The receiver's evidence showed that after his appointment he furnished plaintiff, at her request, with a list of stockholders, in which her own name appeared, and that she did not disclaim being a stockholder, and did not begin suit for two years thereafter. Certain entries on the bank's books showed plaintiff to be a stockholder, but she had not received for the certificates she held on the bank's books, and it did not appear that she knew of the entries. In the letters to the comptroller and to defendant, written after the bank's insolvency, plaintiff, who was inex-

perienced in business matters, referred to herself as a stockholder. *Held,* that the evidence did not estop plaintiff from showing that she was not a stockholder, and that that issue was properly submitted to the jury.

2. SAME—INTEREST.

In a suit against the receiver of a national bank for money loaned the bank while it was a going concern, it was error to permit plaintiff to recover interest on the loan after the bank's suspension and the appointment of a receiver, since debts of an insolvent bank must be liquidated by the receiver as of the date when insolvency supervenes, and the amount of all debts computed as of that day.

3. APPEAL—MODIFICATION OF JUDGMENT.

Where, in a judgment against the receiver of a national bank, interest on the claim has been erroneously allowed, and the amount of such erroneous interest can be determined by the court of appeals by a mathematical computation, the judgment of the trial court will be canceled and annulled as to the amount of such interest, and affirmed as to the balance.

In Error to the Circuit Court of the United States for the District of Kansas.

Action for money loaned by Lizzie E. Williams against the American National Bank of Arkansas City, Kan., and John Watts, receiver of said bank. From a judgment in favor of plaintiff, defendants bring error. Modified.

Samuel R. Peters (John C. Nicholson, on the brief), for plaintiffs in error.

R. R. Vermilion (W. E. Stanley, Earle W. Evans, J. C. Pollock, and J. T. Lafferty, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This case was before this court at the December term, 1897, a writ of error having been sued out previously by Lizzie E. Williams, the present defendant in error, to reverse a judgment that was recovered against her on the first trial by the receiver of the American National Bank of Arkansas City, one of the present plaintiffs in error. Williams v. Bank, 56 U. S. App. 316, 29 C. C. A. 203, 85 Fed. 376. The first judgment having been reversed on the former hearing, a second trial was had before a jury, which resulted in a verdict against the American National Bank of Arkansas City and its receiver, John Watts, the present plaintiffs in error, in the sum of $42,586.83, to reverse which a second writ of error has been brought.

As the facts out of which the case arises are fully reported in the case above cited, we only deem it necessary to say on the present occasion that Mrs. Williams, who was the plaintiff below, sued the American National Bank of Arkansas City and its receiver, the bank having become insolvent, to recover the sum of $28,250, which she claimed to have loaned to the bank on April 15, 1890, while it was a going concern. The receiver denied that any such loan had ever been made to the bank, and insisted that the sum of money sued for was paid by the plaintiff below to the bank, on or about the time stated in her complaint, for the purchase of 250 shares of the capital stock of the bank; and that she had ever since remained a stockholder of the bank, holding stock to that amount. The issue which appears to have been litigated on the second trial, as on the first trial, was whether the sum of money last mentioned was loaned to the bank at an agreed rate

of interest of 12 per cent. per annum, and a certificate of stock taken as collateral security for the same, as the plaintiff claimed, or whether she was a purchaser of the bank's stock to the amount of 250 shares, as the receiver claimed. Upon this issue the finding on the second trial was in favor of the plaintiff, as heretofore stated.

In view of our former decision, which disposed of several questions that were then raised, only two questions are presented by the present record which we deem it necessary to notice. The first is whether the jury were properly allowed to determine the issue of fact heretofore stated; and the second is whether the plaintiff below, on the state of facts which was developed at the trial, should have been held to be estopped from denying that she was a stockholder in the insolvent bank.

The first of these questions is practically answered by our previous decision. When the case was heard formerly, we held, in substance, that upon the evidence contained in that record the case should have gone to the jury, and that the action of the trial court in withdrawing it from their consideration could only be accounted for on the ground that the trial judge entertained the erroneous view that the issuance of the stock certificate and the acceptance of the same by the plaintiff estopped her from saying that she was not a stockholder, and from explaining by parol evidence the circumstances under which the stock certificate happened to be issued in her name. 56 U. S. App. 320, 29 C. C. A. 203, 85 Fed. 377, 378. The testimony on the last trial in support of the plaintiff's cause of action appears to have been more full and explicit than it was on the first trial. She testified to the existence of an express agreement between herself and the cashier of the bank, whereby the latter agreed on behalf of the bank to borrow the sum of money in controversy, and to pay interest thereon at the rate of 12 per cent. per annum, payable semiannually, and as security for the loan to deliver to her a certificate for 250 shares of the bank's stock. She further testified that this agreement was executed on her part by the loan of the money, and that she accepted the certificate merely as collateral, being induced to do so by the representation of the cashier that the bank was solvent, and that the stock was adequate security for the money loaned. The testimony of the plaintiff to the effect last stated was fully corroborated by the evidence of another witness, who claimed to have been present in the bank, and to have heard the aforesaid agreement between the plaintiff and the cashier when it was made. We shall accordingly forego further discussion of this branch of the case, with the statement that as there was direct and positive testimony that the money in controversy was received by the bank as a loan, and that the stock was accepted by the plaintiff merely as collateral security, it was the province of the jury to decide how far, if at all, the force and effect of such evidence was overcome by the other testimony in the case. The verdict below is supported by substantial evidence, and the action of the trial court in submitting the case to the jury cannot be successfully challenged on appeal.

The contention on the part of the receiver that the plaintiff below should be held estopped to deny that she is a stockholder of the insolvent bank is founded upon the following facts: On August 7,

101 F.—60

1891, about eight months after the bank had become insolvent and a receiver had been appointed, the plaintiff applied to the receiver by letter for a list of shareholders of the bank, and shortly thereafter was furnished with such a list, by mail, in which her own name appeared as the owner of 250 shares of the bank's stock. She did not in response to this letter assert that she was not a stockholder, and ask to have her name stricken from the list, nor did she bring the present action until July, 1893. The stock certificate book of the bank showed that on June 17, 1890, a certificate for 250 shares of stock had been issued to Mrs. Lizzie E. Williams, "being funds [as the stock certificate recited] accumulated before marriage, and separate from all other property, transferable only on special indorsement in person"; but other entries in the same book showed that this stock had been transferred to her from stock issued on account of Lamson and Thwing, who were, respectively, the cashier and president of the insolvent bank. The stock certificate in question was not receipted for by the plaintiff on the books of the bank, and it does not appear that she ever saw any of the entries respecting the stock that may have been made either upon the books of the bank, or in reports to the comptroller, by the officers of the bank. In a letter that was written by the plaintiff to the comptroller on October 1, 1891, and in a letter that was written to the receiver of the bank on December 16, 1891, in which certain inquiries were made concerning the affairs of the bank, she referred to herself as a stockholder therein.

We think that the testimony aforesaid, which is all that the record contains bearing upon the point now under consideration, was insufficient to justify a declaration by the court that the plaintiff was estopped from denying that she was a stockholder. It was competent and persuasive testimony, no doubt, on the issue whether the plaintiff had bought the stock or loaned money to the bank upon the stock as collateral; but in view of the other testimony in the case, to which reference has already been made, showing the agreement between her and the cashier, and the circumstances under which the stock was accepted, it cannot be said as a matter of law that the testimony created an estoppel, and precluded the plaintiff from showing the truth. The fact that in one or two letters the plaintiff referred to herself as a stockholder in writing to the receiver and comptroller cannot be regarded as a conclusive admission on her part that she was the absolute owner of the stock, when it is considered that she was in a measure inexperienced in business transactions, and that, having a stock certificate in her hands, she may not have understood the difference between owning the stock absolutely and holding it in pledge as security for a debt. This case is clearly distinguishable from, and must not be confounded with, those cases in which it has been held by this court that one who buys stock from a national bank while it is a going concern, and who suffers his name to be borne upon the books as a shareholder, and accepts dividends in that capacity, cannot, as against creditors, rescind the contract when the bank becomes insolvent, upon the ground that the purchase was induced by fraud. Lantry v. Wallace, 38 C. C. A: 510, 97 Fed. 865; Scott v. Latimer, 60 U. S. App. 720, 33 C. C. A. 1, 89 Fed. 843; Bank v. Newbegin, 40 U. S. App. 1, 20

C. C. A. 339, 74 Fed. 135. In the case in hand the plaintiff asserted that she did not purchase the stock; that she neither consented to become a shareholder nor received dividends on the stock as such, but that she simply accepted the certificate and held it as collateral for a loan, and received interest on the loan pursuant to her agreement with the cashier, so long as the bank was a going concern. Such being the facts, as the jury have found, she is not debarred from showing, even as against the receiver, her true relation to the insolvent bank. She never voted the stock represented by the certificate, nor attempted to exercise any of the rights of a shareholder, and, so far as the present record discloses, she never knowingly permitted herself to be listed as a shareholder, or to be held out to the world as such, so long as the bank was engaged in business. All of the acts upon which the receiver attempts to found an estoppel were committed after the bank ceased to be a going concern, and it must be adjudged that such acts as are relied upon are insufficient to preclude her from showing that she is simply a creditor of the bank, if such be the fact.

An error which is assigned upon the record was committed, however, in the allowance of interest upon the plaintiff's demand. The lower court directed the jury to allow interest at the rate of 6 per cent. per annum from October 1, 1890 (up to which time interest had been paid), to the day of trial. In accordance with this instruction, the jury allowed interest to the amount of $14,336.87. As the suit is against the receiver of the insolvent bank to establish a demand which he had declined to allow, and as the debts of an insolvent bank must be liquidated by the receiver as of the date when insolvency supervenes, and the amount of all debts computed as of that day, it was erroneous to allow interest on the plaintiff's demand as against the receiver subsequent to December 26, 1890, when the bank ceased to do business and a receiver was appointed. White v. Knox, 111 U. S. 784, 4 Sup. Ct. 686, 28 L. Ed. 603. It is unnecessary, however, to reverse the judgment because of this error, as the verdict of the jury shows the amount of interest which is included in the judgment, and by computing the interest on the debt from October 1, 1890, to December 26, 1890, we have been able to ascertain that interest to the amount of $13,956.37 was erroneously allowed. Deducting this latter sum from $42,586.83, the total amount of the verdict, leaves the sum of $28,630.46, for which a judgment should have been entered. The judgment will be affirmed for the latter amount, and canceled and annulled for the residue, in accordance with a practice which is established by the following cases: Railroad Co. v. Estill, 147 U. S. 591, 622, 13 Sup. Ct. 444, 37 L. Ed. 292; Board v. Sherwood, 27 U. S. App. 458, 468, 11 C. C. A. 507, 64 Fed. 103, 110.