In re NOYES BROS. Ex parte DILLINGHAM. Ex parte CLARK. Ex parte EASTMAN.

(District Court, D. Massachusetts. April 17, 1905.)

No. 6,862.

1. CORPORATIONS — BANKRUPTCY — STOCKHOLDERS — PLEDGES — INDIVIDUAL LIABILITY.

Rev. St. Me. c. 47, § 85, declares that a pledgee for value, holding a certificate of corporate stock as security merely, shall not be subject to any of the liabilities of the stockholder unless he appears on the books of the corporation as the absolute owner of the stock. *Held*, that where the books of a bankrupt corporation were not in accord with reference to stock held by a claimant as security for a loan to the corporation, but the stock ledger, after the entry of claimant's ownership, contained the notation, "Note 5 years given. Stock as collateral due 1907"—it sufficiently appeared that the claimant was not the absolute owner of the stock, and was therefore not individually liable as a stockholder for corporate debts.

2. SAME—ENTRIES.

Recitals attached to similar entries of stock held by pledgees, "Jan. 23, 1902, 3 years note—Due Jan. 23, 1905," and, "For 3 years—collateral note given," were also sufficient to show that the holders of the stock were pledgees only, and not stockholders.

In Bankruptcy.

Jeremiah Smith, Jr., trustee, pro se.

Amos L. Hatheway, for creditors.

136 F.—62

LOWELL, District Judge. Dillingham lent $3,000 to the bankrupt corporation, taking its note therefor, with a certificate of 30 shares of its stock as collateral security. The certificate was issued in Dillingham's name without qualification, but the stock ledger contained the following entry:

A. E. Dillingham, Sandwich, Mass.

| 1902. | | No. Transfer. | No. Certif. | No. Shares. |
|---|---|---|---|---|
| June 2, | Thirty shares | N. B. Inc. | 156 | 30 |

Note 5 years given. Stock as collateral due 1907.

That Dillingham can prove his claim was not seriously disputed. Proof involves two propositions: First, that he was a creditor of the bankrupt corporation, and not merely an ordinary stockholder; second, that he held as collateral security the stock which had been issued to him. But one question remains, viz., was Dillingham individually liable as stockholder, so that the trustee in bankruptcy can set off his individual liability against the corporation's admitted liability to him?

The individual liability which by statute is attached, under varying conditions, to corporate stock as security for the payment of the corporate debts, is ordinarily the liability of the stockholder; that is, of the person who holds legal title to the stock as owner. This is true so generally that it may be said to be part of the common law of corporations. Now the pledgee of most kinds of personal property is not deemed the owner thereof. He has not a complete legal title thereto, but only what is called a "special property." The general property is in the pledgor. In the case of corporate stock, however, the decisions and statutes concerning the respective titles of pledgor and pledgee are not uniform. The title to the stock in any particular corporation depends upon the law of the state which created the corporation, and so, in order to determine who had title to the stock here in question, and who was individually liable in relation thereto, we must refer to the statutes and decisions of Maine. The trustee relies upon Rev. St. Me. c. 47, § 85:

"A pledgee for value, holding a certificate of stock of a corporation for security merely, shall not, while he holds such stock, be subject to any of the liabilities of a stockholder unless he appears on the books of the corporation as the absolute owner of such stock."

The trustee contends that this section, derived from Laws 1897, p. 328, c. 293, § 2, amounts to a provision that the pledgee of corporate stock is liable if "he appears on the books of the corporation as the absolute owner of such stock."

The interpretation of this statute is not altogether easy, and may depend upon the law of Maine existing before its passage. In Freeman v. Harwood, 49 Me. 195, 198, the defendant held corporate shares by way of collateral security, and the court said, "The legal title of the shares was in the defendant at the time of the alleged sale." This is an assertion that the legal title to stock pledged is in the pledgee rather than in the pledgor. An exception

to the general rule governing the title of pledgees is thus admitted in the case of corporate stock. The dictum in Freeman v. Harwood has support elsewhere. See Lowell on Transfer of Stock, §§ 54, 55; Wentworth v. French, 176 Mass. 442, 57 N. E. 789; Ball El. Light Co. v. Child, 68 Conn. 522, 37 Atl. 391; Wheelock v. Kost, 77 Ill. 296; Hale v. Walker, 31 Iowa, 344, 7 Am. Rep. 137; Easton v. German-American Bank, 127 U. S. 532, 536, 8 Sup. Ct. 1297, 32 L. Ed. 210.

On the other hand, there is authority that the pledgee of corporate stock is not individually liable by reason of his title thereto. See Pauly v. State Trust Co., 165 U. S. 606, 17 Sup. Ct. 465, 41 L. Ed. 844, where the cases are discussed at length. The title of the pledgee of stock was in that case treated like that of the pledgee of other personal property—not as a general ownership, but as a special property. In their practical application, these two rules just stated differ less than in the theories of ownership which they recognize. Most of the cases which treat the pledgee as having the complete legal title are concerned with a pledgee who is entered on the corporate books as the unqualified owner of the stock. They speak of the pledgee as trustee for the pledgor, by reason of his having taken a transfer of the stock to himself on the corporation's books. The language used is general, but the decision seldom covers any pledgee who has not taken this transfer to himself without qualification. What would be the state of the title if the transfer to the pledgee described him as pledgee, they do not consider. On the other hand, those cases which hold that a pledgee, as such, is not individually liable, yet admit that he may become so by reason of certain entries on the corporation's books made with his consent. If in any case the stockholder is liable, so is any other person who is estopped to deny that he is a stockholder. Where the pledgee of stock represents himself to the creditors of the corporation as stockholder, and where the creditors, relying upon that representation, have acted upon it to their hurt, he is held estopped as against them, though his true status was known to the corporation. By somewhat artificial reasoning, the books of the corporation have been deemed to be a representation of the ownership of its stock, and if, with his consent, a person is therein described as stockholder, he is deemed to have joined in the representation. By another legal fiction, all creditors of the corporation are presumed to have become so in reliance upon the representations contained in the corporation's books. Hence any one who appears on the corporate books as stockholder has been held to be estopped, as against any and all creditors, from disputing the individual liability which by statute attaches to the stockholder. A pledgee may be bound by this estoppel as well as any other person. He is not held liable as pledgee, but his status as pledgee does not protect him from that liability which attaches to other persons not stockholders. If he has permitted himself to appear on the corporation's books as the unqualified holder of its stock, he is held individually liable in some jurisdictions where individual liability ordinarily at-

taches to the pledgor. Thus in Pauly v. State Trust Co. it was said:

"If, by the direction or with the knowledge of the pledgee, the shares are placed on the books of the association in such way as to imply that the pledgee is the real owner, then the pledgee may be treated as a shareholder."

Thus it has come to pass that the law of Maine, as stated in Freeman v. Harwood and modified by the act of 1897, which holds the pledgee to be the holder of the legal title to the stock, and, as the holder of this title, to be individually liable as stockholder if he appears on the books of the corporation as absolute owner of the stock, does not greatly differ in its effect from the law in those jurisdictions where it is held that the pledgee, as such, has not the legal title to the stock, and so is not individually liable as pledgee, but may become liable by estoppel if with his own consent he appears on the corporation's books as stockholder. The form of entry in the books of the corporation is deemed important, because it is treated as a statement of the facts on which individual liability depends, made publicly and authoritatively by the person whose name appears therein.

In the case at bar the books of the corporation are not in accord. The certificate issued to Dillingham, the book from which it was taken, and the "Treasury Stock Ledger Account" in the "Safeguard General Ledger Private," set Dillingham down as an ordinary stockholder. In the "Stock Ledger," on the other hand, under the heading "Treasury Stock," the entry shows informally, but with sufficient clearness, that he was only pledgee. If the creditor is presumed to contract in reliance upon the books of the corporation—though persons do not generally examine certificate books or corporate ledgers before lending money—and if the books are contradictory in their statements of stock ownership, which book shall be deemed to prevail? Upon what books of the corporation must the pledgee appear as the absolute owner of the stock in order to subject him to individual liability? Upon what books must he appear as pledgee in order to exempt him from this liability? It should seem that the certificate itself may be disregarded. The creditor will not be presumed to rely upon papers of which, as a whole, he cannot possibly have knowledge. The certificate is notice to the pledgee of the entry upon the corporate books, and the pledgee's acceptance of the certificate is evidence that he consented to the corresponding entry, but the form of the certificate itself does not otherwise add to his liability. Williams v. American Bank, 85 Fed. 376, 29 C. C. A. 203. The "Safeguard General Ledger Private," in the case at bar, seems to have been a private book outside the ordinary course of bookkeeping. The certificate book and the stock ledger are left.

Upon the whole, after examination at large of the stock ledger, I am of opinion that it is the book in which is contained the authoritative statement of the ownership of the corporate stock—the book in which a creditor would look if he wished to find out who were stockholders. It is therefore the "books of the corporation,"

designated in the statute. As Dillingham appears therein as pledgee, and not as absolute owner of the stock, he is not individually liable.

Judgment of the referee affirmed.

## Ex parte Clark.

The facts were the same as in the Dillingham case, except that the entry in the stock ledger was as follows:

Jan. 23, 1902, 3 years note—Due Jan. 23, 1905.

Miss Anna M. Clark, Framingham, Mass.

| | | No. | No. | No. |
| --- | --- | --- | --- | --- |
| 1902. | | Transfer. | Certif. | Shares. |
| Jan. 23. | Five | | 146 | 5 |

From this entry, I think it sufficiently appears that the stock was held in pledge.

## In re Eastman.

The facts were the same as in the Dillingham case, except that the entry was as follows:

Adeline W. Eastman, Saunders St., Brighton, Mass.

For 3 years—collateral note given.

| | | No. | No. | No. |
| --- | --- | --- | --- | --- |
| 1901. | | Transfer. | Certif. | Shares. |
| Sept. 17. | Ten | | 139 | 10 |

From this entry, I think it sufficiently appears that the stock was held in pledge.

Judgment of the referee affirmed.