## MURRAY v. SILL.

(Circuit Court of Appeals. Ninth Circuit. August 24, 1925.)

No. 4472.

**1. Banks and banking ⬤⟹248(1)—Waiver by depositors of suspended national bank held not to affect liability of stockholders.**

An instrument signed by each depositor in a suspended national bank, consenting to the acceptance of an offer for the assets of the bank exclusive of certain notes and of "the superadded stockholders' liability," and waiving 50 per cent. of his proven claim, but providing that "it is understood, however, that I am to retain my proportionate interest in the proceeds of the excepted assets," held not to affect the liability of stockholders under the statute.

**2. Banks and banking ⬤⟹248(2)—Comptroller has power to determine necessity for assessment against stockholders.**

The authority of the comptroller to determine the necessity of making an assessment against stockholders of a suspended national bank and to institute proceedings for its collection cannot be controverted by a stockholder.

In Error to the District Court of the United States for the Southern Division of the District of Idaho; Frank S. Dietrich, Judge.

Action at law by C. C. Sill, receiver of the First National Bank of Nampa, Idaho, against J. H. Murray. Judgment for plaintiff, and defendant brings error. Affirmed.

J. B. Eldridge, of Boise, Idaho, for plaintiff in error.

Van de Steeg & Breshears, Ralph R. Breshears, and Geo. H. Van de Steeg, all of Nampa, Idaho, for defendant in error.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge. Sill, as receiver of the First National Bank of Nampa, Idaho, recovered judgment against Murray for $16,000 on a stockholder's liability (Act Dec. 23, 1913, c. 6, § 23 [U. S. Comp. St. § 9689]) upon 160 shares of the capital stock of the bank. Murray brought writ of error.

[1] The bank suspended business as of March 17, 1923, and turned over its affairs to the Comptroller of the Currency on March 19, 1923, and a receiver was appointed. After assessment and demand were made by the Comptroller of the Currency, Murray refused to pay, upon the ground that the depositors signed a waiver which, he contended, was a renunciation of any and all rights that the depositors had to collect on the statutory liability. The waiver came about in this way: In April, after the bank

was closed, one Thompson offered, in writing, to buy all of the "assets" of the bank exclusive of notes of a certain face value and also "exclusive of the superadded stockholders' liability," and of certain other specified property. A large majority of the depositors signed and delivered to a depositors' committee a printed waiver wherein, after a specification of the substance of Thompson's offer, including the exception of the "statutory stockholders' liability," the depositor appointed certain persons to act as his agents and attorney in fact to negotiate with Thompson "in accordance with the proposition made and filed," and ratifying all acts done by his agents in negotiating such settlement, providing that the same should result in his receiving 50 per cent. of the amount of his proved claim deposited in the bank to his credit, and expressly authorizing his agents to "waive" 50 per cent. of his claim against the bank in order to effect "said" settlement. The waiver further provided: "It is understood, however, that I am to retain my proportionate interest in the proceeds of the excepted assets." At a directors' meeting at which Murray, who was also a director, was present, Thompson's offer was accepted, and the officers of the bank were directed to make the necessary transfers of all the assets "with the exceptions noted," and thereafter at a stockholders' meeting, which Murray attended, the minutes of the board meeting were read at length, and all of the acts of the board "as evidenced by the minutes as read" were considered and in all respects ratified and confirmed.

In addition to the record evidence, the court heard oral testimony bearing upon the circumstances under which the waivers were executed and the contemporaneous construction put upon them by depositors and stockholders, including Murray; and, in giving his judgment, the judge expressed the opinion that the waivers were signed with the clear understanding on the part of the depositors and stockholders, including Murray, that the liability of the stockholders was not affected at all by the proposed transfer to Thompson.

When the bank suspended business, the rights of creditors attached under section 5151, Revised Statutes of the United States (38 St. 273), and the liability of Murray as a stockholder became fixed. Scott v. Deweese, 181 U. S. 202, 21 S. Ct. 585, 45 L. Ed. 822. Although in a strict sense that liability was not an asset of the bank, because it could not be enforced for the benefit of the institution as a corporation, nevertheless

it is "treated as a means of creating a fund to be applied with and in aid of the assets of the bank towards the satisfaction of its obligations." Richmond v. Irons, 121 U. S. 27, 50, 7 S. Ct. 788, 798 (30 L. Ed. 864). Application of the assets and the enforcing of the liability of the stockholders, "however otherwise distinct, are by statute made connected parts of the whole transaction which constitutes the liquidation of the affairs of the bank." Scott v. Latimer, 89 F. 843, 33 C. C. A. 1. The foundation of the decisions is that the stock subscribed is in equity a fund for payment of creditors, and the statutory liability cannot be modified or released by action of the corporation and the stockholders.

Looking to the written offer of Thompson and the several clauses of the waiver signed by the depositors of the bank of Nampa, we think it is plain that Thompson's offer to buy "all of the assets of the bank exclusive of promissory notes, * * * and also exclusive of the superadded stockholders' liability," put out of his proposed transaction any claim that the depositors might have against a shareholder. And from the viewpoint of the depositors, all possible misunderstanding of the term "assets" used in the waiver was removed by the expressed exception of the stockholders' statutory liability from property and choses in action which Thompson offered to purchase, and by the retention clause in the waiver.

[2] We need not refer to the oral evidence of the surrounding circumstances, for we think the only reasonable construction of the writings is in accord with the view of the District Court. The point that Murray may defend against the assessment, notwithstanding the fact that the Comptroller has levied it and ordered it collected, is met by reference to the pleading. By his answer Murray admitted that he was a shareholder and that assessment and demand were made by the Comptroller, but averred that the waiver was a discharge of his liability. He could not controvert the authority of the Comptroller as to the necessity for instituting proceedings to enforce · his liability as a shareholder or the determination of that question by the Comptroller. Such contentions, having been long since passed upon by the Supreme Court, are not open to further discussion. Bushnell v. Leland, 164 U. S. 684, 17 S. Ct. 209, 41 L. Ed. 598; Martin v. Bennett (D. C.) 291 F. 626; Fifer v. Williams (C. C. A.) 5 F.(2d) 286.

The decree is affirmed.