**STEELE, County Treasurer, v. RANDALL et al.**

Circuit Court of Appeals, Eighth Circuit.
April 4, 1927.

No. 7423.

1. Banks and banking ⬦285—Creditor of national bank, suing after insolvency and before appointment of receiver, held not entitled to lien under state law creating lien on lands of judgment debtor (U. S. Comp. St. §§ 9823, 9834; Comp. St. Neb. 1922, § 8986).

Under Rev. St. U. S. §§ 5236, 5242 (U. S. Comp. St. §§ 9823, 9834), forbidding establishment of lien against a national bank, creditor bringing suit after bank went into control of examiner, but before appointment of receiver, *held* not entitled to lien, under Comp. St. Neb. 1922, § 8986, creating a lien on lands of judgment debtor from date of judgment, since it is not the appointment of a receiver which fixes right of creditors, but the date of insolvency.

2. Insolvency ⬦24—Insolvency is unaffected by intentions or hopes of persons affected.

Insolvency is a condition unaffected by intentions or hopes of persons affected.

3. Banks and banking ⬦232—National banks are "federal instrumentalities."

National banks are "federal instrumentalities," and controlled by federal statutes relating thereto.

4. Banks and banking ⬦287(1)—Receiver of national bank is an "agent and officer of United States" (Comp. St. §§ 9821–9823).

Receiver, appointed for national bank under Rev. St. §§ 5234–5236 (Comp. St. §§ 9821–9823), is not in any sense such an official as receiver appointed by court of equity, but is an administrative officer selected by Comptroller, and is an "agent or officer of the United States."

Appeal from the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Suit by C. H. Randall, as receiver of the First National Bank of Carroll, Neb., and others, against James J. Steele, County Treasurer of the County of Wayne. Decree for plaintiffs, and defendant appeals. Affirmed.

James E. Brittain and Fred S. Berry, both of Wayne, Neb., for appellant.

H. E. Siman, of Winside, Neb., for appellees.

Before STONE and VAN VALKENBURGH, Circuit Judges, and SYMES, District Judge.

STONE, Circuit Judge. From a decree declaring void the lien of a state court judgment on real estate belonging to a suspended national bank and being administered by a receiver appointed by the Comptroller, this appeal is brought.

The bank was insolvent and went into the control of an examiner on May 5, 1923. Thereafter, appellant, a depositor therein, brought suit, in a state court, against the bank and its sureties on a bond given to secure the payment of this deposit and secured a judgment. Under the state law, such judgment was a lien on the real estate of the judgment debtor. Thereafter, a receiver was appointed. The receiver filed this bill to remove the cloud of such judgment and claimed lien upon the real estate owned by the bank. The case was heard on the amended bill and answer thereto. The trial court made a finding "that the judgment obtained by the respondent against the First National Bank of Carroll, Nebraska, was obtained subsequent to the insolvency of the First National Bank of Carroll, Nebraska, and if allowed to stand

would constitute a preference and would prevent a ratable distribution of the assets of said bank among the creditors thereof," and decreed "that said judgment constitutes neither lien against nor cloud upon any real estate then owned by said First National Bank of Carroll, Nebraska, and that said defendant and his successor and all persons claiming under them or either of them be forever enjoined from asserting any such lien or cloud on account of said judgment." From that decree this appeal is brought.

There is no dispute of fact which rules this case. Upon May 5, 1923, the board of directors of the bank passed a resolution as follows:

"Resolved, that owing to the continual withdrawal of deposits and the inability to take care of the items presented, it is hereby resolved that the board of directors deem it advisable to turn the bank over to W. N. Hackney, national bank examiner, pending a reorganization or a consolidation of the bank's affairs."

Upon the same day, the examiner took charge and remained in charge until appointment of the receiver on August 13, 1923, and the receiver is yet in charge engaged in winding up the affairs of the bank. On May 17, 1923 (while the examiner was in charge), appellant filed suit in the state court to recover deposits it had in the bank. June 30, 1923, a default judgment was entered for the amount of the deposits. The state statute (Comp. Stat. Neb. 1922, § 8986) declares a lien on lands of a judgment debtor from the day of judgment entered.

[1] The controlling question here is whether a lien based on the above judgment is prevented by section 5242 of the Revised Statutes (Comp. St. § 9834), which is as follows:

"All transfers of the notes, bonds, bills of exchange, or other evidences of debt owing to any national banking association, or of deposits to its credit; all assignments of mortgages, sureties on real estate, or of judgments or decrees in its favor; all deposits of money, bullion, or other valuable thing for its use, or for the use of any of its shareholders or creditors; and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void; and no attachment, injunction or execution, shall be issued against such association or its

property before final judgment in any suit, action, or proceeding, in any state, county, or municipal court."

It is properly conceded that, if this statute is applicable, this lien must fail. First National Bank v. California, 262 U. S. 366, 369, 370, 43 S. Ct. 602, 67 L. Ed. 1030; Van Reed v. People's National Bank, 198 U. S. 554, 25 S. Ct. 775, 49 L. Ed. 1161; Davis v. Elmira Sav. Bank, 161 U. S. 275, 16 S. Ct. 502, 40 L. Ed. 700; Pacific National Bank v. Mixter, 124 U. S. 721, 8 S. Ct. 718, 31 L. Ed. 567; Cook County National Bank v. United States, 107 U. S. 445, 448, 2 S. Ct. 561, 27 L. Ed. 537.

[2] Appellant contends the statute is not applicable because this judgment was secured before the receiver was appointed. It is well to have in mind the exact situation. On May 5, 1923, a resolution of the directors of the bank declared "the inability to take care of the items presented." On that day, the examiner took charge and remained in charge until the receiver was appointed who found it necessary to and is liquidating the bank. Clearly, the bank was insolvent at and from the above date. The circumstance that the above resolution was expressed to be for the purpose of reorganization or consolidation is immaterial. Insolvency is a condition unaffected by intentions or hopes of the persons affected. When the bank could not meet its obligations as they became due, it was insolvent. Federal Reserve Bank v. Idaho Grimm Alfalfa Seed Growers' Association, 8 F.(2d) 922, 927 (C. C. A. 9th). At that time, appellant was an ordinary creditor of the bank. Thereafter, and while the examiner was in charge, appellant filed and promptly secured its judgment. The evident purpose of this move was to convert itself into a lien creditor and thereby secure an advantage and preference over other general creditors. There can be no criticism of appellant for attempting to better its situation. The question is whether the statute permits it thus to do so.

[3] National banks are federal instrumentalities (First National Bank v. California, 262 U. S. 366, 368, 43 S. Ct. 602, 67 L. Ed. 1030; Assaria State Bank v. Dolley, 219 U. S. 121, 31 S. Ct. 189, 55 L. Ed. 123), and the federal statutes (R. S. §§ 5234-5236 [Comp. St. §§ 9821-9823]; 19 Stat. 63, as amended by 27 Stat. 345, and 29 Stat. 600 [Comp. St. § 9827]) have provided the method and machinery to wind up the affairs of insolvent national banks and have stated the rights of creditors in such distribution. The statute (R. S. § 5236) re-

quires a "ratable" distribution among creditors who have properly established their claims. One of the necessities to secure such ratable distribution was to prevent any ordinary creditor from procuring preferential rights. This was sought to be accomplished through section 5242. Clearly, that section prevents such preference through the voluntary action of the bank or its officials. The question here is whether this statute, when construed in the light of the purposes to be accomplished, covers such preferences secured by the creditor without the aid or connivance of the bank or its officials.

[4] Appellant places much reliance upon the fact that its judgment was secured before the receiver was appointed by the comptroller. We think this is unimportant. The inaccurate use of the term "receiver" in the statute has led appellant to an erroneous conclusion. This statutory "receiver" is not in any sense such an official as a receiver appointed by a court of equity. He is an administrative officer selected by the Comptroller and is an agent and officer of the United States (United States v. Weitzel, 246 U. S. 533, 541, 38 S. Ct. 381, 62 L. Ed. 872; In re Chetwood, 165 U. S. 445, 458, 17 S. Ct. 385, 41 L. Ed. 782; Bushnell v. Leland, 164 U. S. 684, 17 S. Ct. 209, 41 L. Ed. 598; Kennedy v. Gibson, 8 Wall. 498, 504, 505, 19 L. Ed. 476; Weitzel v. U. S., 274 F. 101 [C. C. A. 6th], certiorari denied 257 U. S. 644, 42 S. Ct. 54, 66 L. Ed. 413), with certain statutory duties in connection with winding up the business of a federal instrumentality. The reason why liens cannot be established against property in administration by such a "receiver" has nothing to do with the reasons which produce the same result as to property being administered by an equity receiver. The reason as to the former is that such liens would, obviously, prevent the "ratable" distribution required by the statute. Clearly, this ratable distribution could, as sought to be done here, be as effectively prevented by a lien secured a day before the receiver was appointed as by one secured a year afterwards. And as effectively prevented by an involuntary lien as by one voluntarily created by the bank or its officials. It is not the appointment of such receiver which fixes the rights of creditors, but the date of insolvency. See Merrill v. National Bank of Jacksonville, 173 U. S. 131, 147, 19 S. Ct. 360, 43 L. Ed. 640, as to allowance of interest; Yardley v. Philler, 167 U. S. 344, 360, 17 S. Ct. 835, 42 L. Ed. 192, and Scott v. Armstrong, 146 U. S. 499, 511, 13 S. Ct. 148, 36 L. Ed. 1059,

as to right to set-off. Section 5242 is a legislative declaration that the ratable distribution shall be protected from voluntary disruption before the appointment of a receiver. Bank of Bethel v. Pahquioque Bank, 14 Wall. 383, 402, 20 L. Ed. 840, and Earle v. Conway, 178 U. S. 456, 20 S. Ct. 918, 44 L. Ed. 1149, adjudged that no involuntary lien can be secured by proceedings begun after appointment of a receiver. Earle v. Pennsylvania, 178 U. S. 449, 20 S. Ct. 915, 44 L. Ed. 1146, establishes that no such lien can be secured through action begun before the bank closed or a receiver was appointed. The only situation left unguarded by the statute and the above decisions to prevent a preference being secured during insolvency is where the lien is established during insolvency and before appointment of a receiver. We think that situation was covered by National Bank v. Colby, 21 Wall. 609, 22 L. Ed. 687. One of the questions then before the court was thus stated (612):

"Two questions are presented in this case for our determination: First, whether the property of a national bank organized under the Act of Congress of June 3d, 1864 [13 Stat. 99], attached at the suit of an individual creditor, after the bank has become insolvent, can be subjected to sale for the payment of his demand, against the claim for the property by a receiver of the bank subsequently appointed."

After stating that "to the first question the act of Congress furnishes an answer in the negative" the court continues as follows:

"The act of Congress prescribes the conditions upon which national banks shall be created; the powers they shall possess; and the consequences of their failure to meet their obligations. All persons dealing with these institutions can only acquire and enforce rights against them under the limitations there designated.

"The object of the act, as its title imports, was to create a national currency secured by a pledge of the bonds of the United States. And to that end it requires security in government bonds for all notes issued; and in case any bank fails to redeem its notes on demand, it provides for their payment on presentation at the treasury of the United States.

"To make good any deficiency which may exist in the proceeds of the bonds to meet the amount expended in paying the notes of a bank, the act declares that 'the United States shall have a first and paramount lien upon all the assets' of the association. Whatever disposition, therefore, may be made

of the property of an insolvent bank, the lien of the United States thereon must exist until the government is fully reimbursed.

"As to the general creditors, the act evidently intends to secure equality among them in the division of the proceeds of the property of the bank. The fiftieth section provides for the appointment of a receiver of an insolvent bank, who shall take possession of its assets, collect its debts, and upon the order of a court of record, sell its real and personal property and pay over the money to the treasury of the United States, subject to the order of the Comptroller of the Currency; that the comptroller shall then advertise for creditors to present their claims against the association, and after making provision for refunding to the United States any deficiency in redeeming its notes, shall make a ratable dividend of the money on all claims proved to his satisfaction or adjudicated in a court of competent jurisdiction.

"The fifty-second section [Comp. St. § 9834], further to secure this equality, declares that all transfers by an insolvent bank of its property of every kind, and all payments of money made after the commission of an act of insolvency, or in contemplation thereof, with a view to prevent the application of its assets in the manner prescribed by the act, or 'with the view to the preference of one creditor over another, except in the payment of its circulating notes, shall be utterly null and void.'

"There is in these provisions a clear manifestation of a design on the part of Congress: First, to secure the government for the payment of the notes, not only by requiring in advance of their issue a deposit of bonds of the United States, but by giving to the government a first lien for any deficiency that may arise on all the assets subsequently acquired by the insolvent bank; and, second, to secure the assets of the bank for ratable distribution among its general creditors.

"This design would be defeated if a preference in the application of the assets could be obtained by adversary proceedings. The priority of the United States and the ratable distribution among the general creditors, so studiously provided for in the act, would in that case be lost. As justly observed by counsel, if preference was left to the race of diligence, creditors living remote from the location of the bank would always be distanced in the contest, and the equality promised to them by the act would be a mere mockery."

It is true that the final judgment in attachment was not entered in this case until after the receiver had been appointed, but that fact is made no part of the basis for the conclusion reached by the court.

The conclusion is that sections 5236 and 5242, construed together, prohibit establishment of a lien by judicial proceedings after insolvency is declared because to permit such would defeat the ratable distribution to creditors required by those sections.

Therefore, the decree should be and is affirmed.