**KENNEDY v. BOSTON–CONTINENTAL NAT. BANK et al.**

**BOSTON–CONTINENTAL NAT. BANK et al. v. KENNEDY.**

Nos. 3131, 3132.

Circuit Court of Appeals, First Circuit.

June 25, 1936.

MORTON, Circuit Judge, dissenting.

596

George B. Rowlings, of Boston, Mass. (Tyler, Eames, Wright & Reynolds, Charles A. Rome, Lewis H. Weinstein, and Joseph Sugarman, all of Boston, Mass., on the brief), for Kennedy and Ulin.

Murray F. Hall and Donald J. Hurley, both of Boston, Mass. (Goodwin, Procter & Hoar, of Boston, Mass., on the brief), for Boston-Continental Nat. Bank and Deitrick, receiver.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge (after stating the facts as above).

The matters to which the parties have chiefly addressed themselves relate to count 5, in which the plaintiff seeks to recover liquidated damages under a covenant of the lease wherein the lessee covenants to pay the lessor, upon the termination of the lease, the excess of the rent reserved over the fair rental value of the premises for the residue of the term. Under this count the District Court allowed the plaintiff to recover $56,580.-70, which is said to be the excess of the rent reserved over the fair rental value from the termination of the lease, about August 31, 1932, to February 1, 1945, less five per cent.

It would seem that the court, in allowing this sum as liquidated damages, must have considered that the liability of the lessee bank became fixed and the sum of $56,580.70 due and owing to the plaintiff on December 17, 1931, the date the bank was declared insolvent by the Comptroller, if there was to be a ratable distribution of the bank's assets among its creditors. After pointing out that the liquidation of a national bank is a statutory proceeding, not one in equity, and, on its being declared insolvent, required a ratable distribution of its assets among its creditors, it stated its view of the law to be that "in adjudicating a claim against the receiver of a national bank the true rule to be applied to the claim of a lessor under a written lease * * * is as follows: If the claim is grounded on a liability absolutely and unconditionally fixed at the time of insolvency, and capable of being determined as to amount when the claim is presented, it may be allowed if seasonably presented." But in applying the rule to the facts of this case the court proceeded on the theory that, under the covenant for liquidated damages, upon the termination of the lease by notice and entry, as therein provided, the liability of the lessee under that covenant became absolutely and unconditionally fixed and the liquidated damages due and owing on the date of insolvency, or as early as December 1, 1931, when the breach of the covenant to pay rent was broken, even though the termination of the lease by notice and entry, upon which the liability was to arise and become fixed, did not take place until long after December 17, 1931. In other words, although the lease, in unequivocal terms, gave the lessor the option, on the breach of the covenant to pay the rent, to determine the lease by a written demand for the payment of the defaulted rent, and, in case it was not paid within thirty days thereafter, to exercise his option by entering upon the leased premises and terminating the lease (all of which acts took place subsequent to December 17, 1931), that the exercise of the option by entry and termination of the lease was not a condition to the creation and fixing of the lessee's liability on the covenant for liquidated damages, and the covenant became operative and the liability of the lessee absolutely fixed on or before December 17, when the lessee-bank was declared insolvent.

If this is what the rule, as stated and applied by the court, means, we cannot accede to it.

By the terms of the lease, its termination by written demand, notice, and entry (the lessee's default still continuing) was a condition precedent to the lessee's liability under the covenant to pay liquidated damages, and until the acts terminating the lease were had and the lease terminated, the lessee's liability under that covenant did not arise and become fixed, and, as these acts and the consequent termination of the lease took place after the declaration of insolvency (December 17, 1931), no liability of the lessee to pay liquidated damages can be said to have arisen and become fixed on or before that date.

The authorities are numerous in the Supreme Court and in the Circuit Courts of Appeal that, to establish a claim against an insolvent national bank in receivership, the liability of the bank (here the lessee) must have accrued and become unconditionally fixed on or before the time it is declared insolvent. Cook County National Bank v. United States, 107 U.S. 445, 2 S.Ct. 561, 27 L.Ed. 537; Scott v. Deweese, 181 U.S. 202, 21 S.Ct. 585, 45 L.Ed. 822; Murray v. Sill (C.C.A.) 7 F.(2d) 589; Dakin v. Bayly, 290 U.S. 143, 54 S.Ct. 113, 78 L.Ed. 229, 90 A.L.R. 999; Scott v. Armstrong, 146 U.S. 499, 13 S.Ct. 148, 36 L.Ed. 1059; Merrill v. National Bank of Jacksonville, 173 U.S. 131, 19 S.Ct. 360, 43 L.Ed. 640; Chemical National Bank v. Armstrong (C.C.A.) 59 F. 372, 28 L.R.A. 231; Kershaw v. Jenkins (C.C.A.) 71 F.(2d) 647; American National Bank v. Williams (C.C.A.) 101 F. 943; Citizens' Bank & Trust Company v. Thornton et al. (C.C.A.) 174 F. 752; American Surety Company v. De Carle (C.C.A.) 25 F.(2d) 18; Steele v. Randall (C.C.A.) 19 F.(2d) 40; Miller v. Irving Trust Company, 296 U.S. 256, 56 S.Ct. 189, 80 L.Ed. 211.

The amount of the claim may be later established, but, when established, it must be the amount *due* and *owing* at the time of the declaration of insolvency, as of which time it is entitled, with the claims of the other creditors, to a ratable distribution of the assets of the bank. If nothing is due at the time of insolvency, the claim should not be allowed, for that would be in violation of the National Bank Act (12 U.S.C.A. § 194) calling for a ratable distribution.

In Manhattan Properties v. Irving Trust Company, 291 U.S. 320, 337, 338, 54 S.Ct. 385, 389, 78 L.Ed. 824, the court, in construing the covenants in two leases conditioned on re-entry and termination of the leases, said: "In both cases the lessor has the choice whether he will terminate the lease. * * * And upon the exercise of the option by the landlord, a new contract, distinct from that involved in the original letting, becomes operative. While there is some color for the claim that bankruptcy is an anticipatory breach of the *lease contract,* entailing a damage claim against the estate, this cannot be true as respects these independent covenants of indemnity. For here, the landlord does not rely upon the destruction of his contract by the bankruptcy; *he initiates a new contract of indemnity by the affirmative step of re-entry. And this new contract comes into being not by virtue of the bankruptcy proceeding, but by force of the act of re-entry, which must occur at a date subsequent to the filing of the petition."* (Italics supplied.)

No more was there here an anticipatory breach of the covenant to pay liquidated damages as that covenant did not become operative until after termination of the lease by entry, which was subsequent to the declaration of insolvency. Had the lease contained a covenant that insolvency shall be a breach of the lease and thereupon, without any further action by the lessor, the lease shall terminate and the lessor be entitled forthwith to damages measured, as provided in the covenant of the lease for liquidated damages, then, on the declaration of insolvency, no doubt a claim would arise and be matured by the agreement for liquidated damages, as indicated in Manhattan Properties v. Irving Trust Co., supra, at the bottom of page 338 of 291 U.S., at page 389 of 54 S.Ct., 78 L.Ed. 824, and as was held in Irving Trust Co. v. A. W. Perry, Inc., 293 U.S. 307, 308, 55 S.Ct. 150, 79 L.Ed. 379, so that the claim would be provable in bankruptcy. But that is not this case. There is no such covenant or agreement in this lease. In the Manhattan Case, a case in bankruptcy, the time of filing the petition was the crucial time on or before which the liability of the lessee had to arise and become unconditionally fixed, while under the National Banking Act that time, as construed by the courts, is the declaration of insolvency. The question whether the liability of a lessee in any given

case has become unconditionally fixed depends upon the construction and meaning of the particular covenant called in question and the attendant circumstances; and this is so whether it is a case arising under the Bankruptcy Act (11 U.S.C.A. § 1 et seq.) or the National Bank Act (12 U.S.C.A. § 21 et seq.).

This claim (count 5) should not have been allowed.

■ As to the 4th count in which the District Court allowed the plaintiff to recover $2,436 for the alleged breach of the covenant of the lessee to maintain and leave the premises in good repair, the liability with which it is sought to. charge the lessee bank did not arise and become fixed on or before the time it was declared insolvent, but long afterwards, when the receiver removed the counters, grills and other fixtures attached to the premises.

Furthermore this claim should not be allowed as a breach of covenant by the lessee bank. It had nothing to do with the removal of the fixtures. The damage was chargeable to the receiver as an expense of administration, and should be so accounted for. He apparently removed them after the termination of the lease.

■ But the failure to remove the iron vaults, the cost of doing which is estimated at $4,500, cannot be regarded even as an expense of administration. Indeed it would seem that the vaults, under the terms of the lease, as the District Court found, had become and were the property of the lessor which neither the lessee nor the receiver had the right to remove and appropriate as assets of the insolvent bank.

This claim was improperly allowed as based on this covenant.

■ The 9th count is based on the covenant of the lease wherein the lessee "covenants and agrees to carry, during the term thereof rent insurance in a sum sufficient to indemnify said lessor against loss of rent (including taxes and like charges) hereunder." By the terms of the lease taxes not paid when due become chargeable as rent.

In this count the plaintiff further alleged that the lessee had "never carried rent insurance required by its covenant and agreement." The plaintiff failed, however, to set forth wherein he was damaged by the alleged failure or in what

amount. It is certain that he should not be allowed to include as · damages under this count the rent and taxes that had accrued and become due on or before December 17, 1931, for the rent and taxes then due have been claimed and allowed under counts 1 and 2. No other rents or taxes were due and owing on or before December 17, 1931, and the only rents, or taxes as rents, that he could claim as damages would be those accruing and becoming due between January 1, 1932, and August 31, 1932, for the lease was terminated on or about that time.

The receiver occupied the premises from January 1 to the termination of the lease and is liable for the value of the use and occupation of them, a sum that may or may not · equal or exceed the rents. On December 17, 1931, it was contingent and 'uncertain whether the plaintiff would suffer any loss from the lessee's failure to pay rent from January 1, 1932, to August 1, 1932. The taxes for 1932 had not then (December 17, 1931) accrued and become due and did not accrue or become due until October 3, 1932, after the lease had terminated, and it was not ascertainable on December 17 what the taxes would be or that there would be any taxes for the lessee to pay, as the lessor might and did terminate the lease before the 1932 taxes became due.

The covenant at best was an indemnity covenant, for the amount recoverable under it was not capable of determination on or before December 17, 1931, the date of insolvency, and could not be completely ascertained until some time after the lease ended. See Manhattan Properties v. Irving Trust Co., supra.

The District Court did not err in refusing to sustain this count, whether the reasons it gave were correct or not.

■ The allowance of the notes as a set-off was proper.

The judgment of the District Court is vacated and the case is remanded to that court for further proceedings not inconsistent with this opinion, with costs to the defendants, appellants.

MORTON, Circuit Judge (dissenting in part).

The allowance of the claim for damages on the lease depends on whether the equity rule, or the bankruptcy rule as to provability should be followed. If

the former, the claim is provable under Filene's Sons Co. v. Weed, 245 U.S. 597, 38 S.Ct. 211, 62 L.Ed. 497, a Massachusetts case on indistinguishable facts; if the latter, Manhattan Properties v. Irving Trust Co., 291 U.S. 320, 54 S.Ct. 385, 78 L.Ed. 824, and Irving Trust Co. v. Perry, 293 U.S. 307, 55 S.Ct. 150, 79 L.Ed. 379, show that it is not.

I think the decisions of the Supreme Court compel us to follow the equity rule. The upshot of those decisions is that the Banking Act provides a complete statutory system for the liquidation of insolvent national banks; and that the act will be construed and administered on equitable principles. Cook County National Bank v. United States, 107 U.S. 445, at page 448, 2 S.Ct. 561, 27 L.Ed. 537; Scott v. Armstrong, 146 U.S. 499, 13 S.Ct. 148, 36 L.Ed. 1059; Davis v. Elmira Savings Bank, 161 U.S. 275, 16 S.Ct. 502, 40 L.Ed. 700; Merrill v. National Bank of Jacksonville, 173 U.S. 131, 19 S.Ct. 360, 43 L.Ed. 640. In the case last cited it is said in the opinion, *"Does the legislation in respect to the administration of national banks require the application of the bankruptcy rule? If not, we are of opinion that the equity rule was properly applied in this case."* Fuller, C. J., 173 U.S. 131, at page 142, 19 S.Ct. 360, 365, 43 L.Ed. 640. On full discussion of the authorities and the statutes which appear to be substantially the same in this particular as those now in force, the question was answered in the negative, and it was held that the bankruptcy rule as to secured claims would not be followed in liquidations of national banks. In Chemical National Bank v. Hartford Deposit Co., 161 U.S. 1, 16 S.Ct. 439, 40 L.Ed. 595, on facts which appear to be no stronger for the lessor, to say the least, than those in the present case, a claim on lease against a failed national bank was held allowable. That the case came up from the state courts cannot in view of the Filene Case, I think, have affected the result. I do not find in the generalized statements in some of the later decisions with reference to the time when rights of parties became fixed with reference to set-off (see Dakin v. Bayly, 290 U.S. 143, 148, 54 S.Ct. 113, 78 L.Ed. 229, 90 A.L.R. 999), an intention to modify or overrule the line of cases just referred to or the principle on which they rest. If the bankruptcy rule is not to be applied in Bank-

ing Act cases with respect to security held on claims proved, I am unable to see on what principle it can be applied to questions of provability in such cases; as I have said, if provability is to be determined by the equity rule, the Filene Case controls the one before us. Of course the rule as to provability ought to be the same whether the liquidation is in equity, in bankruptcy, or under the Banking Act; but it is not, and it is beyond our province to make it so. The claim seems to me to be allowable.

In other respects I concur in the majority opinion.