INTERNATIONAL WESTMINSTER BANK LIMITED and Coutts & Co., on behalf of themselves and all others similarly situated, Plaintiffs-Appellants,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION et al., Defendants-Appellees.

Nos. 74–1262, 74–1263.

United States Court of Appeals, Ninth Circuit.

Jan. 8, 1975.

Richard Murray (argued), of McCutcheon, Doyle, Brown & Enersen, San Francisco, Cal., for plaintiffs-appellants.

Charles A. Legge (argued), of Bronson, Bronson & McKinnon, San Francisco, Cal., Edward Bransilver (argued), of F.D.I.C., Washington, D. C., Stanley A. Doten (argued), of Morrison, Foerster, Holloway, Clinton & Clark, San Francisco, Cal., for defendants-appellees.

Before CARTER, HUFSTEDLER and TRASK, Circuit Judges.

## OPINION

PER CURIAM:

Appellants in these two consolidated actions seek declaratory and injunctive relief concerning certain transactions undertaken by appellee Federal Deposit Insurance Corporation (FDIC) as receiver of the United States National Bank of San Diego (USNB) and by Crocker National Bank (Crocker), which are asserted to be void as preferences. Jurisdiction is based upon 28 U.S.C. § 1331 (federal question). The district court dismissed appellants' complaint for failure to state a claim upon which relief could be granted and later dismissed the action and entered judgment in favor of appellees.

The plaintiffs as appellants are three London banks which on October 18, 1973, the date of the receivership, held seven commercial letters of credit issued by USNB in the aggregate sum of $25.7 million. In addition to the named plaintiffs, the complaint alleges that they represent a class consisting of all other persons, corporations, associations and other entities (except members of the "Designated Group") whose claims as creditors of USNB have not been and are not to be assumed by Crocker.

On October 18, 1973, the United States Comptroller of the Currency, as overseer of national banks, declared USNB insolvent, ordered it closed and appointed FDIC as its receiver in accordance with 12 U.S.C. § 1821(c). Having anticipated this event, FDIC determined, prior to its occurrence, to attempt to consummate a purchase and assumption transaction by

which a successor bank would acquire assets and assume liabilities and continue the operation of the failing bank without interruption. Thus it quietly contacted several banks which might qualify and invited bids for the USNB and its some 63 branches. In the late afternoon of the day of closing, the bid of the Crocker National Bank was accepted. The proposal was submitted to the district judge to whom the liquidation of USNB was assigned and after an ex parte hearing the plan was approved. The main office and 62 branches (all except one in Nassau) opened the following morning as units of Crocker.[1]

The purchase and assumption agreement under which the transition took place permitted Crocker to acquire the assets and assume the liabilities for a premium of $89.5 million. Excluded from the acquisition and assumption were all of those assets and liabilities associated with a "Designated Group" consisting of the longtime controlling shareholder of USNB and his associates together with a great many other persons, firms, corporations and entities listed in "Schedule A" attached to the agreement and otherwise described in the agreement. The assets were excluded because they were thought to be of doubtful and uncertain value and the liabilities were likewise subject to question. FDIC as receiver therefore conveyed to Crocker a selected group of assets and liabilities and $128,780,000 in cash representing the difference between the amount of obligations assumed and the value of the assets transferred less the premium paid by Crocker.

The purposes which appellant states that FDIC hoped would be achieved by the transaction, apart from the general welfare of the community, were: (1) to pay selected creditors of USNB 100 percent, including interest, of the amounts owed to them by USNB; (2) to leave other creditors such as those associated with the "Designated Group" with a claim against the receivership; and (3) to permit FDIC to recoup the $128,780,-000 of its money paid to Crocker by providing for a first lien against the receivership assets, thus discharging its obligation as deposit insurer with minimum or no cost to itself.

There is no contention made that the letters of credit issued to appellants fall within the "Designated Group" classification or that they are otherwise invalid.[2]

Appellants argue that the FDIC-Crocker transaction prejudices their ability to recover on their letters of credit and makes them second-class creditors. Specifically, whereas all holders of obligations assumed by Crocker will be able to collect 100 percent of amounts due, appellants are relegated to the questionable assets remaining in the receivership. And even then their obligations are subordinated to the first lien created by FDIC. Legally, appellants contend, this disparate treatment violated 12 U.S.C. §§ 91 and 194.[3]

1. The monumental complexity of this transaction may be more readily understood by noting that USNB at the time of its closing had approximately $1.25 billion in book value of assets. and liabilities with deposits of $930 million and 62 branches in four Southern California counties and one in Nassau.

2. Upon the date of the agreement it was not known how much of the total of the appellants' letters of credit of $25.7 million would be paid or otherwise liquidated by the date of oral argument. If all were discharged the litigation could be terminated. It appears, however, from supplemental papers which we permitted to be filed, that all three appellants still claim that the total amounts due, principal and interest, on all their several letters of credit have not been completely liquidated.

However, the amount unliquidated in this ongoing receivership has not been finally ascertained.

3. Section 91 as here pertinent reads:
"All transfers . . . [of debts] owing to any national banking association, . . .; all assignments . . . [of obligations owed such an association]; all deposits of money, bullion, or other valuable thing for its use, or for the use of any of its shareholders or creditors; and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed in this chapter, or with a view to the preference of one creditor to another,

The court granted an order dismissing the complaint for the reason that the complaint failed to state a claim upon which relief could be granted in that 12 U.S.C. § 91 did not apply to a receiver appointed pursuant to 12 U.S.C. § 191 or to a transaction entered into by a receiver pursuant to 12 U.S.C. §§ 192 and 1823(e) and for the additional reasons that the plaintiffs' claims were not ripe for adjudication and they lacked standing to sue upon an allegation of a violation of 12 U.S.C. § 194.

Some 3 weeks later the court amended its order and found that no amendment to the complaint could be made at that time which would state a claim and therefore dismissed the action. It is from that final order that these appeals have been taken.[4]

■ We believe that the court was correct in its order holding that the complaint failed to state a claim upon which relief could be granted. We disagree with the court's further order to the effect that no amendment could be made at that time which would state a claim and for that reason the action should be dismissed.

The complaint is plainly deficient in its attempt to allege basic equity jurisdiction.

"The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506–507, 79 S.Ct. 948, 954, 3 L.Ed.2d 988 (1959). *See also* O'Shea v. Littleton, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); Caddy-Imler Creations, Inc. v. Caddy, 299 F.2d 79 (9th Cir. 1962).

Here there was no allegation of irreparable injury. The appellants were the holders of letters of credit which upon their face entitled them to receive payment of monies at a date and upon terms stated therein. There was no allegation that those payments were in default or that demand for payment had been made and refused. Neither was there any charge that Crocker and FDIC would not be responsible in the event they had acted in violation of law and that the appellants had been damaged. FDIC may sue and be sued in any court of law or equity, state or federal. 12 U.S.C. § 1819.[5]

In addition, we simply are not persuaded that as a matter of basic equitable considerations, a showing has been made on the pleadings and briefs and in argument to justify the grant of an injunction to interdict the execution of the agreement of the parties. Already, as of the time between the ruling of the trial court and the argument on appeal, all the letters of credit of the named parties have been paid except two; one of those remaining matures September 8, 1975, and the other on December 22, 1975. The plaintiffs-appellants' claim for relief is only for payment from the receivership of an undetermined sum of money

. . . shall be utterly null and void; . . .."

Section 194 provides in pertinent part:

"From time to time . . . the comptroller shall make a ratable dividend of the money so paid over to him by such receiver [of an insolvent national bank] on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction, and, as the proceeds of the assets of such association are paid over to him, shall make further dividends on all claims previously proved or adjudicated; . . .."

4. An action based upon the transactions described herein was first filed in the United States District Court for the Northern District of California; within a few days an identical action was filed in the Southern District of California. After a hearing on the question of venue a transfer was made so that both cases proceeded in the Southern District. The orders of the district court herein described were first entered in the case filed in the Southern District; immediately following, a similar disposition was made in the Northern District case which had been transferred. Appeals were taken in both and consolidated here.

5. Where the claim against FDIC is based upon tort, suit might have to be under the Federal Tort Claims Act against the United States. Magellsen v. FDIC, 341 F.Supp. 1031 (D.Mont.1972). In either event there is a remedy at law from a financially responsible defendant.

due at an undetermined date. The record does not reveal any inadequacy of the appellants' legal remedy in the event that they are wrongfully prevented by appellees from receiving that payment.

The complaint also sought declaratory relief based upon 12 U.S.C. §§ 91 and 194. We do not reach the issues raised by the claims for declaratory relief until the appellants have established themselves as creditors of the receivership with unpaid claims. That they allege themselves to be holders of certain letters of credit issued by the defunct bank is not enough. Their claims may not have matured; they may not be valid as against the receiver. *See* Argonaut Savings & Loan Association v. FDIC, 392 F.2d 195 (9th Cir. 1968); Kennedy v. Boston-Continental National Bank, 84 F.2d 592, 597 (1st Cir. 1936). Other defenses may be asserted or they may have been paid. But appellants should have an opportunity to amend their complaint and assert their claim if, indeed, they have one.

The judgment is reversed and the case is remanded with directions to the district court to fix a time within which claims should be filed, if such a time has not been fixed, and a time within which the appellants may file an amended complaint should they wish to do so.