John T. **HENNESSY, et al., Plaintiffs,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION as receiver for Meritor Savings Bank, Defendant.**

Thomas **CALLAHAN, Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION as receiver for Meritor Savings Bank, Defendant.**

Civ. A. Nos. 93–5589, 94–1949.

United States District Court, E.D. Pennsylvania.

July 29, 1994.

Alice W. Ballard, Samuel & Ballard, P.C., Philadelphia, PA, for plaintiffs.

Jose L. Ongay, Philadelphia, PA, Michael O'Brien Boldt, Bourne, Nell and Kenyon, Summit, NJ, Mary Beth Sullivan, Seyfarth, Shaw, Fairweather & Geraldson, Washington DC, for defendant.

## ORDER AND MEMORANDUM

KATZ, District Judge.

AND NOW, this 29th day of July, 1994, upon consideration of Plaintiffs' Motion for Summary Judgment, Defendant's Motion for Summary Judgment and the responses thereto, it is hereby **ORDERED** that the Plaintiffs' Motion is **DENIED** and Defendant's Motion is **GRANTED.**

This is an action by former managers of Meritor Saving Bank ("Bank") to recover severance pay from the Federal Deposit Insurance Corporation ("FDIC") following the FDIC's takeover of the Bank. The parties' cross-motions for summary judgment raise a number of issues:

1. Did the events surrounding the closing of the Bank constitute a "reorganization" which would trigger the Bank's severance pay plan (SPP)?
2. Did the plaintiffs' rights to severance pay vest prior to their termination? That is, did the plaintiffs' rights to severance pay become fixed and certain prior to the appointment of the FDIC as receiver?
3. Did the FDIC repudiate the severance plan?
4. Are the plaintiffs' claimed damages actual compensatory damages?

## I. FACTS

The plaintiffs are all former managers of the Bank. During a period of major downsizing,[1] the Bank's parent unit, the Meritor Financial Group (the Bank and its parent are hereinafter collectively referred to as "Meritor"), created a severance pay program ("SPP") in order to retain employees. *See* Pls.' Ex. C., McCarron Dep. p. 48–49.

The plaintiffs each received personally addressed, but otherwise essentially identical letters, dated October 3, 1990, from Meritor's Chairman Roger S. Hillas. Statement of Undisputed Facts, ¶ 9; *see also* Second Amended Compl., Ex. B. The letters addressed Meritor's SPP. The operative parts of these letters state:

> Meritor senior management is acutely aware that it is essential to retain motivated employees such as you in key positions.
>
> As evidence of this awareness, Meritor is extending the severance benefit provided to you under the Separation Pay Program to a total of 52 weeks pay. This enhanced benefit will be payable under the same terms and conditions as provided for in the Separation Pay Program if you are separated from employment by Meritor anytime on or before December 31, 1992.[2]

Second Amended Compl., Ex. B.

The SPP was "designed to provide financial assistance during an employee's transi-

---

**1.** Between 1988 and 1992, Meritor divested many of its assets and business units. This resulted in a reduction in the number of Meritor employees from roughly 4,500 to roughly 1,000. Statement of Undisputed Facts, ¶ 2.

**2.** Plaintiffs Callahan, Gibson and Soriero received letters extending their benefits for 26 weeks, rather than 52 weeks. Statement of Undisputed Facts, ¶ 11.

tion to new employment following an involuntary separation from the service of Meritor Financial Group where that separation results from lack of work, job elimination, reorganization, or reduction-in-force." Second Amended Compl, Ex. A, p. 1. The Summary Description of the SPP [3] stated that "Meritor reserves the right to modify the Separation Pay Program at any time and from time to time, and to discontinue the Program in whole or in part at any time." *Id.* The SPP was an "employee welfare benefit plan" as defined by the Employee Retirement Income Security Act of 1974 (ERISA). Statement of Undisputed Facts, ¶ 6; *see also* 29 U.S.C. § 1002(1).

On December 11, 1992, the Secretary of Banking of the Commonwealth of Pennsylvania determined that Meritor was in an unsafe and unsound condition. Statement of Undisputed Facts, ¶ 13. Accordingly, she closed the Bank and placed it in receivership. *Id.* Also on December 11, 1992, the FDIC was appointed as Meritor's receiver and it accepted this appointment. *Id.* The FDIC as receiver then executed a Purchase and Assumption agreement with Mellon Bank ("Mellon").[4] *Id.* ¶ 14; Pls.' Ex. F. This agreement transferred a portion of Meritor's assets and liabilities (but not liabilities for severance payments) to Mellon.[5] *Id.* The assets transferred totaled approximately $2.9 billion dollars. Pls.' Ex. E. The FDIC retained approximately $1.4 billion worth of assets not transferred to Mellon. *Id.*

Later on December 11, 1992, the FDIC closing manager, Jack Goodner, made a brief presentation to Meritor employees. When his comments were finished an employee asked whether severance would be paid. Statement of Undisputed Facts ¶ 15. Goodner thought not, but was not sure. *Id.* After looking towards two other FDIC officials for guidance, Goodner responded "No." *Id.;* Def. Ex. 4, Goodner Dep. p. 26–27.

The plaintiffs' employment terminated on December 11, 1992 upon the appointment of the FDIC as receiver.[6] Def.'s Am. *Answer* ¶ 16. The FDIC denied all the plaintiffs' claims for severance payments.[7] Statement

---

3. The Summary Description states that "this booklet is a *summary* only, and that the details of the Separation Pay Program are explained in full detail in the Corporate Policy Manual." Second Amended Compl, Ex. A, p. 1 (emphasis in the original). The description goes on to state that if any inconsistency exists between the information described in the summary and the description in the Corporate Policy Manual, the Corporate Policy Manual will govern the outcome. *Id.* The Corporate Policy Manual is not part of the record before the court. Therefore, the Summary Plan Description controls any issue of the SPP's interpretation. *See* Statement of Undisputed Facts, ¶ 6, n. 1.

4. In 1992, Meritor proposed to the FDIC that Meritor would sell the rest of its deposits and liquidate the remaining assets in a transaction following the pattern of the 1990 sale of its suburban bank branches to Mellon. Statement of Undisputed Facts, ¶¶ 2, 3. The FDIC in its corporate capacity never rejected the proposal. *Id.*

5. The Purchase and Assumption agreement provided that Mellon would purchase: a) certain assets related to Meritor's banking business; b) Meritor's credit card business; c) Meritor's safe deposit, safekeeping and trust businesses, and d) its rights to provide mortgage services for others. Statement of Undisputed Facts, ¶ 14. Mellon assumed various liabilities, including liabilities on customer deposit accounts. Also, Mellon was given an option to purchase or lease Meritor branches and other bank premises owned or leased by Meritor. *Id.*

6. On December 11th, following the FDIC's appointment as receiver, a meeting for Meritor employees was held. At the meeting no one ever explicitly informed the Meritor employees that they were terminated. Pls.' Ex. J, Goodner Dep., p. 42.

Effective at the close of business on December 11, 1992, plaintiffs became employees of Keytech Resources, Inc. Statement of Undisputed Facts, ¶ 20. Keytech was an employment service working for Mellon Bank. *Id.* While Mellon expressed an intention to hire a substantial number of employees, it had no obligation to do so. See Def.Ex. 17, Mancini Dep.Ex. 26. Mellon also indicated that the FDIC "terminated all Meritor employees" on December 11, 1992. *Id.* Plaintiffs who were terminated involuntarily from Keytech received some severance pay based on their years of service with Meritor. Statement of Undisputed Facts, ¶ 21; *see, e.g.,* Def.Ex. 1., Bracken Dep., p. 50 (two weeks severance). Mellon ultimately paid for these severance expenditures. Def.Ex. 10, Hitchcock Dep. p. 13. No Meritor assets were used to make these payments. Statement of Undisputed Facts, ¶ 22.

7. The FDIC does not assert that the severance payments plaintiffs seek are "golden parachute payments." *Cf.* 12 U.S.C. § 1828(k)(4) (defining golden parachute payments). The FDIC may

of Undisputed Facts ¶ 15; Second Amended Compl., Ex. C. The FDIC has a long established but unwritten policy and practice of not paying severance claims filed by employees of failed banks. *Id.* ¶ 18.

On the Monday following the events of Friday, December 11, 1992, described above, the former branches of Meritor opened as usual under the name Mellon–PSFS without interruption to the business of regular customers. Statement of Undisputed Facts ¶ 5.

## II. DISCUSSION

### A. Was there a reorganization?

■ While the plaintiffs argue that their severance rights under the SPP were activated when they were terminated as part of a reorganization,[8] the facts and the law do not support this contention. The critical question is whether the new entity carried forward the business enterprise of Meritor. *Atlas Tool Co. v. Commissioner of Internal Revenue*, 614 F.2d 860, 868–867 (3d Cir.), *cert. denied*, 449 U.S. 836, 101 S.Ct. 110, 66 L.Ed.2d 43 (1980). The FDIC sold part of Meritor to Mellon and is in the process of liquidating the rest. This does not constitute a continuation of business, but rather a termination of business. Because the FDIC was involved with the termination of Meritor rather than the continuation of its business, there was no reorganization. *Id.* The sale of assets from one entity to another without retention of any interest by the seller in the purchase is not a reorganization. *Cortland Specialty Co. v. Commissioner of Internal Revenue*, 60 F.2d 937, 939 (1932), *cert. denied*, 288 U.S. 599, 53 S.Ct. 316, 77 L.Ed. 975 (1933). This was not a corporate readjustment of existing interests. *United States v. Niagara Hudson Power Corp.*, 53 F.Supp. 796, 801 (S.D.N.Y.1944).

### B. Vesting

■ The rights of parties are determined as of the closing time of a financial

institution and the appointment of a receiver. *In re Christian A. Fisher Building & Loan Assoc.*, 339 Pa. 5, 7, 14 A.2d 98 (1940). The receiver may only pay claims that were fixed and certain (i.e. provable) at the time of appointment. *See Kennedy v. Boston–Continental Nat'l Bank*, 84 F.2d 592, 597 (1st Cir.1936), *cert. dismissed*, 300 U.S. 684, 57 S.Ct. 667, 81 L.Ed. 887 (1937). *Kennedy*, a leading case in the area and the principal authority cited by both sides, states that

> to establish a claim against an insolvent national bank in receivership the liability of the bank (here the lessee) must have accrued and become unconditionally fixed **on or before the time it was declared insolvent.**
>
> The amount of the claim may be later established, but, when established, it must be the amount *due* and *owing* **at the time of the declaration of insolvency**.... If nothing is due **at the time of insolvency,** the claim should not be allowed.

*Kennedy*, 84 F.2d at 597 (bold emphasis added, italics emphasis in the original) (citations omitted); *see also Dababneh v. FDIC*, 971 F.2d 428, 434 (10th Cir.1992) (the claims "must have been in existence **before** insolvency") (quoting *FDIC v. Liberty Nat'l Bank*, 806 F.2d 961, 965 (10th Cir.1986)).

■ The plaintiffs had no contractual rights to severance benefits at the time the FDIC was appointed receiver. The letters sent to the plaintiffs did not create any greater right to severance benefits than those possessed by other Meritor employees. The October 3, 1990 letters specifically limited plaintiffs benefits to "the same terms and conditions as provided for in the Separation Pay Program." *See* Second Amended Compl., Ex. B. The SPP explicitly stated that the plan may be withdrawn at any time. Second Amended Compl., Ex. A, p. 1. Therefore, the plaintiffs' rights to severance did not vest by virtue of the October 3, 1990

---

prohibit or limit any golden parachute payments regardless of whether such payment is fixed and certain at the time of the institutions insolvency. 12 U.S.C. § 1828(k)(1).

**8.** Because the term "reorganization" is not defined in the SPP, the court will use its ordinary

meaning. The word "reorganization" is defined as "the act or process of reorganizing." Webster's New Collegiate Dictionary 972 (1979). "Reorganize" is defined as "to organize again or anew." *Id.*

letter. The only way the plaintiffs' rights could have vested was by the occurrence of one of the enumerated conditions precedent in the SPP (i.e. "involuntary separation from the service of Meritor Financial Group where that separation results from lack of work, job elimination, reorganization, or reduction-in-force.") during the period in which the SPP was in effect.

 Pursuant to its terms, the SPP could have been terminated at any time. An employer may generally terminate welfare benefit plans at will, so long as the procedure followed is consistent with the plan and ERISA. *Deibler v. Local Union 23,* 973 F.2d 206, 210 (3d Cir.1992). Because both the FDIC and Meritor had the right to terminate the SPP at will, the plaintiffs had no vested right to severance pay.

 The plaintiffs have the burden of showing that they were involuntarily separated before the appointment of the receiver. *See Dababneh,* 971 F.2d at 434. Since plaintiffs were not terminated prior to the appointment of the FDIC as receiver, their rights to severance pay did not vest until after Meritor was declared insolvent by the Commonwealth's Secretary of Banking.

Since the plaintiffs' rights to severance did not arise prior to the FDIC takeover, the court must now address whether their right to severance arose after the FDIC takeover.

### C. Repudiation

#### 1. *FDIC's right to repudiate*

 Plaintiffs cannot recover severance pay in this case because the FDIC repudiated the SPP upon its appointment as receiver. As receiver, the FDIC had the power to repudiate any contract that it determines to be "burdensome" in order to "promote the orderly administration of the institution's affairs." 12 U.S.C. § 1821(e)(1); *Howell v. FDIC,* 986 F.2d 569 (1st Cir.1993). The FDIC may exercise its right to repudiate within a reasonable time period following its appointment as receiver. 12 U.S.C. § 1821(e)(2); *see also 1185 Ave. of America Assoc. v. RTC,* 22 F.3d 494, 498 (2d Cir.1994) (repudiation after 90 days not unreasonable under the circumstances). If the FDIC chooses to repudiate a contract, it may repudiate a contract retroactively to its date of appointment as receiver. 12 U.S.C. § 1821(e)(3)(A)(ii). Because the SPP was unfunded, *see* Second Amended Compl., Ex. C., the FDIC could reasonably determine that, in wrapping up the affairs of Meritor, paying severance pay to plaintiffs would be "burdensome." *Morton v. Arlington Heights Federal Sav. & Loan,* 836 F.Supp. 477, 485 (N.D.Ill.1993) ("**Any** unnecessary payment is burdensome to an insolvent institution" (emphasis in the original)). Pursuant to its authority under section 1821(e), the FDIC immediately repudiated the SPP on the day of its appointment as receiver. On the day Meritor was closed, the FDIC closing manager, Jack Goodner, informed Meritor employees that they would not receive severance pay. Def. Ex. 4, Goodner Dep. p. 26–27. While this repudiation may have been informal, it was clear, unambiguous and reasonable under the circumstances. *See Lawson v. FDIC,* 3 F.3d 11, 15 (1st Cir.1993).

 The court's scope of review of the FDIC decision to repudiate is very limited. *Cf. Howell,* 986 F.2d at 572 ("litigant would normally have an uphill battle in overturning an FDIC finding of 'burden' "); *Atlantic Mechanical, Inc. v. RTC,* 772 F.Supp. 288 (E.D.Va.1991) (abuse of discretion standard applied), *aff'd,* 953 F.2d 637 (4th Cir.1992); *Morton v. Arlington Heights Federal Sav. & Loan,* 836 F.Supp. 477, 484–85 (N.D.Ill.1993) (questioning whether a district court has jurisdiction to review a receiver's repudiation of a contract). The receiver has wide discretion to decide what is burdensome. 12 U.S.C. § 1821(e)(1)(B); *1185 Ave. of America Assoc. v. RTC,* 22 F.3d 494, 498 (2d Cir.1994). The receiver does not have to give reasons for that decision. *1185 Ave. of America Assoc.,* 22 F.3d at 498; *Morton,* 836 F.Supp. at 485. Because the receiver did not desire to continue the employment of any of the plaintiffs, it was reasonable for the FDIC to repudiate the SPP and the individual letters. *See Morton,* 836 F.Supp. at 485–86.

#### 2. *Actual direct damages*

 The plaintiffs ability to recover for damages caused by the FDIC's repudiation

of the SPP are limited to actual direct compensatory damages. 12 U.S.C. § 1821(e)(3). Severance payments are not such damages. *Howell v. FDIC,* 986 F.2d 569 (1st Cir.1993). Therefore, plaintiffs' claims for damages do not survive..

In *Howell v. FDIC,* 986 F.2d 569 (1st Cir.1993), four officers of a failed bank brought suit against the FDIC for severance pay. The bank by letter agreement [9] promised the officers severance pay in the event of termination. 986 F.2d at 570. The letters made clear that these agreements did not alter the "at will" employment relationship between the parties. *Id.* The officers alleged that the FDIC knew of and approved of their agreements with the bank. *Id.* at 571. After the bank failed, the FDIC was appointed receiver. *Id.* Within two months, the officers were terminated. The officers filed claims for severance pay with the FDIC. The FDIC disallowed these claims as violative of public policy. *Id.* The district court ruled that the FDIC lawfully repudiated the contracts between the plaintiffs and the bank and that under the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") 103 Stat. 183 (codified in various sections of 12 and 18 U.S.C.), there were no compensable damages for the resulting breach. *Id.*

Because the *Howell* court found that the FDIC validly repudiated the plaintiff officers' contracts, its decision focused on whether the officers could recover damages for the repudiation of those contracts. *See* 12 U.S.C. § 1821(e)(3). A receiver's liability for repudiation of any contract is limited to actual direct compensatory damages suffered by an aggrieved person as a result of the repudiation. 12 U.S.C. § 1821(e)(3)(A)(i). The *Howell* court held that the officers' claims did not comprise allowable claims under FIRREA, because severance payments are not "actual direct compensatory damages" under 12 U.S.C. § 1821(e)(3)(A)(i). *Id.* at 572–73. The court concluded that severance payments

are at best an estimate of likely harm made at a time when only prediction is possible. When discharge actually occurs, the employee may have no way to prove the loss from alternative employments foregone, not to mention possible disputes about the discharged employee's ability to mitigate damages by finding new employment. A severance agreement properly protects against these uncertainties by liquidating the liability. Such payments comprise or are analogous to "liquidated damages," at least when the amount is not so large as to constitute an unenforceable penalty.

*Howell,* 986 F.2d at 573.

The factual situation in *Office and Professional Employees Int'l Union v. F.D.I.C.,* 27 F.3d 598 (D.C.Cir.1994) (hereinafter *OPEIU* ) makes the case distinguishable from the case at bar. In *OPEIU,* the plaintiff union and its members had entered into a collective bargaining agreement with the National Bank of Washington. As part of this agreement the bank agreed to make severance payments in the event employees were terminated for economic reasons. Four days after the FDIC was appointed receiver, the FDIC met with union representatives and formally repudiated the collective bargaining agreement. The union filed claims with the FDIC for severance pay on behalf of its members. The FDIC denied these claims. The district court found for the FDIC.

On appeal, the union challenged the district court's decision that the FDIC was not liable for damages as a result of the repudiation. *See* 12 U.S.C. § 1821(e)(3) (limiting a receiver's liability to actual direct compensatory damages for repudiation of any contract). The *OPEIU* court reversed the district court's decision holding that the "employees had a right to severance pay as of the date of the appointment—albeit a contingent one—and that right should be treated essentially the same as the right to accrued vacation pay or health benefits." 27 F.3d at 601. The court held that the employees right to severance pay was vested since it

---

9. These letters did not create an ERISA employee welfare benefit plan. *See Deibler v. Local Union 23,* 973 F.2d 206, 209 (3d Cir.1992). The letters were specifically addressed to a small group of bank officers and were simple contracts and not an employee welfare benefit plan.

was part of the employees' compensation package (i.e. part of the collective bargaining agreement) and therefore it had a real present value. *Id.*

The *OPEIU* decision is distinguishable from the case at bar because the DC circuit based its decision on the union's collective bargaining agreement. To illustrate the "real value" of the severance plan, the court stated that if the bank had repudiated the collective bargaining agreement the union could have gone to court under the Taft–Hartley Act for enforcement of the agreement including the value of the repudiated severance pay provisions. In the case at bar, however, the plaintiffs could not have enforced the SPP in court because Meritor had the right to terminate the SPP at will. Therefore, in the case at bar, the SPP had no real value at the date of insolvency and the court cannot base actual compensatory damages upon the severance pay program's provisions.