971 F.2d 428
 Anton K.M. DABABNEH, Plaintiff-Appellant,
v.
FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate
capacity and as Receiver of Moncor Bank, N.A.,
Hobbs, New Mexico, a national banking
association, Defendant-Appellee.
 No. 88-1272.
 United States Court of Appeals,
Tenth Circuit.
 April 27, 1992.
Order on Denial of Petition for
Rehearing and Suggestion for Rehearing
En Banc Aug. 20, 1992.
 
 J. Douglas Foster (Paul M. Fish, with him on the brief), of Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, N.M., for plaintiff-appellant.
 Evelyn D. Sahr, Trial Atty., Torts Branch, Civ. Div. (John R. Bolton, Asst. Atty. Gen., Stuart E. Schiffer, Acting Asst. Atty. Gen., Helen M. Eversberg, William L. Lutz, U.S. Attys., Jeffrey Axelrad, Director, Torts Branch, Civ. Div., Sophie E. Smyth, Trial Atty., Torts Branch, with her on the briefs), U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.
 Before HOLLOWAY, HENLEY,* and EBEL, Circuit Judges.
 
 HOLLOWAY, Circuit Judge
 
 1
 This appeal from the United States District Court, District of New Mexico, stems from that court's granting of a motion to dismiss pursuant to Fed.R.Civ.P. Rule 12(b)(6) in favor of defendant-appellee Federal Deposit Insurance Corporation, in its corporate capacity ("FDIC-C"). Concluding that plaintiff-appellant Dababneh's claim against FDIC-C is not viable, and that his claim for future rent is unprovable under federal law, we affirm.
 
 I. Background
 
 2
 The facts are not in dispute. In February 1984, plaintiff Dababneh and First City Financial Corporation ("First City"), a holding company for Moncor [National] Bank ("Moncor"), executed a sale/leaseback agreement whereby Dababneh purchased three properties from First City for $7.6 million. Moncor maintained offices on these properties. The agreement provided for a 15-year lease to First City, commencing March 1, 1984, with four options to extend the lease for additional five year periods. The lease called for a minimum annual rent of $836,000, payable in monthly installments, subject to future adjustments based on an inflation index. One month into the lease term, First City assigned the lease to Moncor through an agreement which left First City still liable under the lease's terms. See Appellee Answer Brief, Attachment 4. Moncor paid rent according to the lease's provisions through the end of August, 1985.
 
 
 3
 On August 30, 1985, the Comptroller of Currency declared Moncor insolvent and appointed the Federal Deposit Insurance Corporation as receiver ("FDIC-R"). Upon taking control of Moncor, FDIC-R immediately entered into a tripartite purchase and assumption transaction ("P & A") with United Bank of Lea County ("United" or "Assuming Bank"), and FDIC-C, pursuant to 12 U.S.C. § 1823(c). Under the P & A, United assumed all of Moncor's deposit liabilities, some of Moncor's other creditor liabilities, and purchased certain Moncor assets. United also paid a premium of $1.2 million for the going concern value of Moncor. By addendum to the P & A, United was granted an option to accept assignment of the Dababneh lease. All Moncor assets rejected by United were transferred to FDIC-C for liquidation. As a result, FDIC-R has no assets to pay claims by any unassumed Moncor creditors, although FDIC-C promised to provide United with sufficient funds to cover all assumed creditor claims. The P & A was approved by a district court order on the same date.
 
 
 4
 Under the P & A, United agreed to pay in full the claims of Moncor's trade creditors which were included in the liabilities assumed. However, United rejected the assignment of the Dababneh lease, notifying FDIC-R on September 26, 1985. On October 4, 1985, FDIC-R wrote Dababneh stating its intention to "disaffirm, cancel and terminate this lease effective sixty (60) days from and after October 9, 1985." Appellee's Answer Brief at 7. Following termination, Dababneh subsequently relet most of the property to United for a 10-year term at fixed monthly rental rates below that originally contracted for with Moncor. On November 21, 1985, approximately three months after Moncor's closing, Dababneh filed a written claim with FDIC-R for financial injuries resulting from termination of the lease. FDIC-R rejected this claim.
 
 
 5
 On August 29, 1986, Dababneh initiated this action against FDIC-R alleging that the P & A transaction constituted a preferential transfer in violation of the National Bank Act, 12 U.S.C. §§ 21, et seq. (1982). Dababneh seeks compensation for the lost rents under his lease with Moncor, terminated by FDIC-R, and related costs incurred to relet the property.[1]
 
 
 6
 The procedural events leading to this appeal began with a Rule 12(b)(6) motion to dismiss filed by FDIC-R in November 1986. Finding that "the motion [was] not well taken[,]" the district court denied the motion in January 1987 without other comment. No further action was then taken by FDIC-R respecting its motion.
 
 
 7
 Realizing that FDIC-R had no assets with which it might pay his claim, Dababneh obtained permission to amend his complaint to add FDIC-C, the banking insurance fund administrator, as a party. The first amended complaint, filed in March 1987, was identical to the original complaint except for the addition of the FDIC-C as a codefendant. FDIC-C moved for dismissal of the first amended complaint, asserting failure to state a claim.[2] This time, however, the district court granted the motion to dismiss by an order in October 1987, again without explanation. By an amended order, the district court formally dismissed the complaint against FDIC-C only, and certified the dismissal as a final judgment pursuant to Fed.R.Civ.P. Rule 54(b). Following this order, Dababneh appealed.
 
 
 8
 Dababneh argues that the P & A affected a "nonratable distribution" in violation of 12 U.S.C. §§ 91 and 194,[3] whereby Moncor's trade creditors were paid 100% of their claims through the liabilities assumed by United, in preference over the unassumed creditors who remain uncompensated after the P & A dissipated the receivership assets held by FDIC-R.[4] Dababneh contends that he is also entitled to 100% payment of his future rent claims against Moncor under the ratable distribution requirement of § 194. See White v. Knox, 111 U.S. 784, 786, 4 S.Ct. 686, 687, 28 L.Ed. 603 (1884) (holding that for ratable distributions, "[a]ll creditors are to be treated alike"). Dababneh argues that under First Empire Bank v. FDIC, 572 F.2d 1361 (9th Cir.1978), cert. denied, 439 U.S. 919, 99 S.Ct. 293, 58 L.Ed.2d 265 (1979), FDIC-C is jointly liable with FDIC-R for this preference, and that FDIC-C can be compelled to supplement the receivership estate from its insurance fund to pay Dababneh's claim. Therefore, he argues, a valid claim exists and dismissal was improper.
 
 
 9
 FDIC-C answers, in relevant part, that FDIC-C's participation in a P & A transaction "does not dilute the distinction between the FDIC's two capacities." Answer Brief at 35. Such participation, FDIC-C insists, "does not impose upon it a duty to creditors of Moncor Bank." Id. Additionally, FDIC-C asserts that Dababneh's claims against it are not ripe because 12 U.S.C. § 194 requires that he "prove" his claim to the satisfaction of either the FDIC-R, or to a court of competent jurisdiction, as a precondition to the pro rata distribution he seeks. FDIC-C contends, as did FDIC-R in its initial, ill-fated motion to dismiss, that federal common law deems actions against receivers for the loss of future rents legally "unprovable." See Answer Brief at 9-13 & n. 17. Accordingly, FDIC-R rejected the claim. Moreover, since the district court has yet to make its own adjudication on the merits of the suit against FDIC-R, FDIC-C argues, "it is premature for this Court to speculate on the appropriate source of payment for the claim." Id.
 
 
 10
 We review the district court's determination of a Rule 12(b)(6) motion under a de novo standard, accepting all factual allegations in the complaint as true. Zilkha Energy Co. v. Leighton, 920 F.2d 1520, 1523 (10th Cir.1990). Moreover, under Rule 12(b)(6), the dismissal of FDIC-C is inappropriate "unless plaintiff can prove no set of facts in support of his claim to entitle him to relief." Thatcher Enterprises v. Cache County Corp., 902 F.2d 1472, 1473 (10th Cir.1990).
 
 II. FDIC-C's Direct Liability
 
 11
 We agree with the FDIC-C that it may not be held to be independently liable for a nonratable distribution, and therefore the district court could properly dismiss the claim against the Corporation to avoid such a result. Plainly, the question of whether the insurance funds which FDIC-C administers must later serve as the source of funds needed to permit the FDIC-R to make a ratable distribution, see, e.g., First Empire, 572 F.2d at 1371 (requiring the FDIC to "supplement the remaining assets should they fall short" of a ratable distribution), is a separate question from whether the FDIC-C can be held independently liable for FDIC-R's actions. That FDIC-C and FDIC-R are legally "two separate entities is a well accepted matter of law." FDIC v. Dempster, 637 F.Supp. 362, 365 (E.D.Tenn.1986). Moreover, this separateness does not disappear when a P & A transaction occurs, because "FDIC as receiver contracts with FDIC in its corporate capacity to purchase the assets that are unacceptable to the assuming bank." FDIC v. Merchants Nat'l Bank of Mobile, 725 F.2d 634, 638 (11th Cir.1984).
 
 
 12
 Dababneh relies, inter alia, on §§ 91 and 194 to hold FDIC-C liable for a nonratable distribution. These statutes, however, do not impose direct liability on FDIC-C; they do not accord FDIC-C any controlling or active role in closing the insolvent bank's affairs. Under § 91, FDIC-R, which has assumed the role of the insolvent bank, must assure that there is no "preference of one creditor to another[.]" Under § 194, the Comptroller is required to make a "ratable dividend ... on all such claims as may have been proved[.]" This duty to ratably distribute, in turn, has been delegated to FDIC-R, which is charged to distribute receivership assets "in conformity with the provisions of law relating to the liquidation of closed national banks[.]" 12 U.S.C. § 1821(d) (1966) (amended 1989).
 
 
 13
 In the instant P & A transaction, FDIC-R was solely responsible for marshalling and distributing the receivership assets and liabilities (including the Moncor lease) to either the proven creditors or the Assuming Bank, as appropriate. By contrast, FDIC-C merely purchased Moncor's unassumed assets from FDIC-R in the transaction, and played no role in selecting which creditors would be paid or in determining how much they would receive. The statutes cited by Dababneh simply do not impose any specific duties regarding Moncor's creditors on FDIC-C (or any other third party) following the purchase of assets from the receiver. Thus, by our reading of the statutory obligations underlying Dababneh's claims, FDIC-C may not be held directly liable for the actions of FDIC-R. See FDIC v. Fonseca, 795 F.2d 1102, 1109 (1st Cir.1986) (refusing to address fraud claims asserted against FDIC-C because it "is not liable for wrongdoings" by FDIC-R); In re F & T Contractors, Inc., 718 F.2d 171, 180-82 (6th Cir.1983) (FDIC-C does not unintentionally assume insolvent bank's liability on letter of credit through P & A transaction).
 
 III. FDIC-C's Alleged Derivative Liability
 
 14
 Alternatively, we also conclude that the claim for future rents against FDIC-R is "unprovable" as a matter of law, and therefore any derivative liability of FDIC-C is also "unprovable."[5] Thus, the district court's dismissal of the claim against FDIC-C was proper on this basis also.[6]
 
 
 15
 This court has long recognized that "[t]o ensure a 'ratable' distribution of assets, as required by 12 U.S.C. § 194, ... the amount of each claim is to be determined as of the date of insolvency." FDIC v. Liberty Nat'l Bank & Trust Co., 806 F.2d 961, 965 (10th Cir.1986) (citing White v. Knox, 111 U.S. 784, 4 S.Ct. 686, 28 L.Ed. 603 (1884)); Fash v. First Nat'l Bank, 89 F.2d 110, 112 (10th Cir.1937). As explained by the Supreme Court:
 
 
 16
 The business of the bank must stop when insolvency is declared.... No new debt can be made after that. The only claims that the [receiver] can recognize in the settlement of the affairs of the bank are those which are shown by proof satisfactory to him or by the adjudication of a competent court to have their origin in something done before the insolvency.
 
 
 17
 White v. Knox, 111 U.S. at 787, 4 S.Ct. at 687. Moreover, it is federal, and not state law, that determines the quantum of proof necessary to establish the validity of claims against a national bank's receiver: "As of the moment that a national bank is declared insolvent and goes into the hands of a receiver, federal law governs the distribution of the bank's assets." Downriver Community Federal Credit Union v. Penn Square Bank, 879 F.2d 754, 759 (10th Cir.1989), cert. denied, 493 U.S. 1070, 110 S.Ct. 1112, 107 L.Ed.2d 1019 (1990).
 
 A.
 
 18
 Before continuing, however, we are presented with the question of what federal law to apply. On August 9, 1989, during the pendency of this appeal, Congress amended the National Bank Act by adopting the Financial Institutions Reform Recovery, and Enforcement Act, Pub.L. 101-73, 103 Stat. 183 (1989) ("FIRREA"). Specifically, Title II of FIRREA deleted several subparagraphs of the National Bank Act, as previously codified at 12 U.S.C. § 1821, and added a new subparagraph: § 1821(e)(4).[7]
 
 
 19
 This new provision states, in relevant part, that: "[i]f the ... receiver disaffirms or repudiates a lease under which the insured depository institution was the lessee, the ... receiver shall not be liable for any damages (other than damages determined pursuant to subparagraph (B)) for the disaffirmance or repudiation of such lease." § 1821(e)(4)(A) (emphasis added). Notably, subparagraph (B) limits the lessor's damage right to unpaid rent accruing before the effective date of the disaffirmance or repudiation, and expressly bars claims "for damages under any acceleration clause or other penalty provision in the lease[.]" Id. at (B)(i)-(ii).
 
 
 20
 Although we read this portion of FIRREA as a codification of existing federal common law, see Bayshore Executive Plaza Partnership v. FDIC, 750 F.Supp. 507, 509 n. 5 (S.D.Fla.1990), aff'd, 943 F.2d 1290 (11th Cir.1991), we need not decide whether to apply FIRREA retroactively to this case. Were FIRREA to apply here, it would foreclose Dababneh's future rent claim. However, as explained below, the same result occurs under federal common law. As such, determining the retroactivity of FIRREA is not critical here and therefore this analysis need not be performed now.[8] Accordingly, we turn to federal case law to determine the "provability" of Dababneh's claim.
 
 B.
 
 21
 Looking to federal case law, this court has long shared the view expressed initially by the First Circuit that:
 
 
 22
 [T]o establish a claim against an insolvent national bank in receivership, the liability of the bank (here the lessee) must have accrued and become unconditionally fixed on or before the time it was declared insolvent.
 
 
 23
 The amount of the claim may be later established, but, when established, it must be the amount due and owing at the time of the declaration of insolvency.... If nothing is due at the time of insolvency, the claim should not be allowed, for that would be a violation of the National Bank Act (12 U.S.C. § 194) calling for a ratable distribution.
 
 
 24
 Kennedy v. Boston-Continental Nat'l Bank, 84 F.2d 592, 596 (1st Cir.1936) (emphasis in original); Fash v. First Nat'l Bank, 89 F.2d 110, 111-12 (10th Cir.1937) (citing Kennedy ). Since Dababneh's claim for future rent was triggered only upon the lease's disaffirmance, which followed the declaration of Moncor's insolvency, his claim was "contingent" upon the date of insolvency. To determine whether a contingent claim has "accrued" on or before the declaration of insolvency for distribution purposes, the court analyzes the "provability" of the claim. See FDIC v. Liberty Nat'l Bank, 806 F.2d 961, 964-66 (10th Cir.1986).
 
 
 25
 In Liberty Nat'l Bank, this court reiterated our adoption of the Ninth Circuit's First Empire test for "provability" of claims triggered by events occurring post-insolvency. Indeed, Dababneh heavily relies on First Empire to establish FDIC-C's joint liability for FDIC-R's preferential transfer.[9] In Liberty Nat'l Bank, we noted that creditors possess provable claims if three conditions are met:
 
 
 26
 first, the claims must have been in existence before insolvency and must not be dependent on new contractual obligations arising after insolvency; second, total liability must be certain at the time the [creditors] sue the [insolvent bank]'s receiver; and third, the claims must be made in a timely manner[.]
 
 
 27
 Id., 806 F.2d at 965 (citing First Empire, 572 F.2d at 1367-69) (emphasis added). The above underscored language refers to a special category of cases discussed in First Empire which covers the "provability" of future rent claims. Under these cases, claims for future rents are categorically deemed "unprovable."
 
 
 28
 First Empire based this part of its test on the First Circuit's Kennedy case. In Kennedy, the plaintiff, assignee of the insolvent bank's landlord, brought an action for liquidated damages based on the loss of future rents due under a fifteen year lease subsequently disaffirmed by the bank's receiver. The Kennedy court, examining the lease, found written notice and re-entry were "condition[s] precedent to the lessee's liability under the covenant to pay liquidated damages, and [therefore] until the acts terminating the lease occurred and the lease was terminated, the lessee's liability under that covenant did not arise and become fixed [until] ... after the declaration of insolvency[.]" Id. at 597. Finding no acceleration clause in the lease,[10] the court held that leases containing rights of re-entry in the lessor create damage rights only after re-entry, whereby a "new" contract for indemnity arises. See id. at 597 (quoting Manhattan Properties v. Irving Trust Company, 291 U.S. 320, 337-38, 54 S.Ct. 385, 389, 78 L.Ed. 824 (1934)). The damage right based on this "new contract" principle, is the "new contractual obligation[ ] arising after insolvency" condition we noted in Liberty Nat'l Bank to the First Empire test. See First Empire at 1367-68.[11]
 
 
 29
 The federal courts have uniformly adopted Kennedy 's common law rule barring as "unprovable" claims for future rent against the receiver of an insolvent bank. See, FDIC v. Grella, 553 F.2d 258, 262 (2d Cir.1977); Argonaut Savings and Loan Ass'n v. FDIC, 392 F.2d 195, 197 (9th Cir.), cert. denied, 393 U.S. 839, 89 S.Ct. 116, 21 L.Ed.2d 110 (1968); Bayshore Executive Plaza Partnership v. FDIC, 750 F.Supp. at 511 (dicta); Unisys Corp. v. FDIC, 724 F.Supp. 454, 456-58 (W.D.Tex.1988); Executive Office Centers, Inc. v. FDIC, 439 F.Supp. 828, 829-30 (E.D.La.1977), aff'd 575 F.2d 879 (5th Cir.1978). See also Dinan v. First Nat'l Bank of Detroit, 117 F.2d 459, 461-63 (6th Cir.1941) (claims for future rent do not accrue prior to insolvency for purposes of § 194); First Nat'l Bank of Chicago v. First Nat'l Bank of Wheaton, 78 F.2d 502 (7th Cir.) (in the absence of a liquidated damages clause, "the courts do not recognize a receiver's liability for damages for breach of a covenant to pay future rent"), cert. denied, 296 U.S. 651, 56 S.Ct. 368, 80 L.Ed. 463 (1935); compare Chemical Nat'l Bank v. Hartford Deposit Co., 161 U.S. 1, 2, 9-10, 16 S.Ct. 439, 439, 442, 40 L.Ed. 595 (1896) (upholding a claim for future rent against the insolvent bank as an "existing demand" because the bank had defaulted on the lease prior to the declaration of insolvency). We agree with the result reached in these cases and apply their rule rejecting as unprovable such a rent claim.
 
 
 30
 In view of this consistent strand of federal caselaw, First Empire is distinguishable as well as inapplicable by its own stated exception. Unlike the provable letters of credit claim involved in First Empire, this case presents an unprovable claim for future rent. Thus, First Empire cannot, in any event, support Dababneh's claim against the FDIC-C.
 
 C.
 
 31
 Dababneh asserts no claim for any unpaid rent as of the date Moncor was declared insolvent, August 30, 1985. Moreover, the lease has no acceleration clause which might make the entire outstanding amount for the unexpired term due upon breach. In fact, the lease, contemplating the insolvency of the lessee, says only:
 
 
 32
 TERMINATION OF LEASE IN THE EVENT OF INSOLVENCY OR BANKRUPTCY: In the event Lessee or its successors or the assignees shall become insolvent or bankrupt, or make an assignment for the benefit of creditors, ... or in the event the bank then operating on the Premises is closed, or taken over by any bank supervisory authority, Lessor may terminate this Lease only with the concurrence of such bank supervisory authority, and such authority shall in any event have the election to either continue or terminate this Lease; provided, that in the event this Lease is terminated, the maximum claim of Lessor for damages or indemnity for injury resulting from the rejection or abandonment of the unexpired Lease shall in no event be in an amount exceeding the maximum amount allowed then by law, in addition to the amount equal to all accrued and unpaid rent and other sums then due hereunder.
 
 
 33
 Answer Brief, Attachment No. 3, at 12, para. 22 (Exhibit C to the Complaint).
 
 
 34
 Clearly, under this provision, the lease continued in effect beyond the date of Moncor's insolvency, as the receiver is given an opportunity to elect to "continue or terminate" the lease. Although the parties apparently contemplated the possibility of a damage award for future rent, indicated by the language: "the maximum claim of lessor for damages or indemnity ... resulting from the rejection ... of the unexpired Lease[;]" such amount contemplated was limited by that "allowed then by law[.]" Thus, whatever right Dababneh has to lost future rent rests on the governing federal law. Agreeing with the numerous cases cited above, we hold that there is no such right. Unlike the letters of credit at issue in Liberty Nat'l Bank, we do not read Dababneh's lease as creating a "fixed amount" obligation on Moncor that would justify treating this case as different from the above cited future rent cases. Thus, Dababneh's ratable distribution claim against FDIC-R is "unprovable," and even if a derivative claim could be asserted against FDIC-C based on FDIC-R liability, any claim for future rents against FDIC-C is also "unprovable."[12]
 
 IV. Conclusion
 
 35
 In sum, because Congress did not impose direct liability on FDIC-C for the actions of FDIC-R, a separate entity, pursuant to 12 U.S.C. §§ 91 and 194, Dababneh has failed to state a valid claim under these provisions. Moreover, because any remaining claim of liability of FDIC-C for future rent is legally unprovable under federal law, Dababneh has failed to assert any set of facts which could afford him relief. Accordingly, the district court's dismissal of the amended complaint for failure to state a claim is
 
 
 36
 AFFIRMED.
 
 
 37
 Before MCKAY, Chief Judge, HOLLOWAY, HENLEY,* LOGAN, SEYMOUR, MOORE, ANDERSON, TACHA, BALDOCK, BRORBY, EBEL and KELLY, Circuit Judges.
 
 ORDER
 
 38
 Aug. 20, 1992.
 
 
 39
 On consideration of appellant Dababneh's Petition for Rehearing and Suggestion for Rehearing En Banc, and the Response of the defendant-appellee, the court concludes as follows:
 
 
 40
 (1) The panel that rendered the decision (Judge Holloway, Judge Henley and Judge Ebel) denies the petition for rehearing. The transaction in question involves an unambiguous contract, from which the panel discerned the intention of the parties. See 1 Williston, Contracts (3rd Ed.) § 95 at 350. And "since here intent must be determined from within the four corners of the writing, the issue becomes a question of law[.]" Percival Constr. Co. v. Miller & Miller Auctioneers, 532 F.2d 166, 171 (10th Cir.1976). The First Amended Complaint alleged only two documents, the written Memorandum and Agreement and the Lease. Upon reexamining the documents at issue, including the Memorandum and Agreement and the Lease made exhibits to Dababneh's First Amended Complaint, the panel remains convinced that the characterization of the transaction as a lease was proper.
 
 
 41
 Unlike the situations in the cases cited in Dababneh's petition for rehearing and suggestion of rehearing en banc, there is nothing of record to indicate that the transaction was intended to create an "equitable mortgage," a secured loan or sale, or some other legal relationship between the parties. Cf. Percival, 532 F.2d at 171-73 ("lease" actually passed title to "lessee" with a security interest in "lessor" where option to purchase set 93% of "rental" payments as applicable to purchase price); United States v. Federal Ins. Co., 634 F.2d 1050, 1053-54 (10th Cir.1980) ("lease" actually a secured installment sale where construction equipment would be owned by "lessee" at end of lease period following $1 nominal payment); In re PCH Assoc., 949 F.2d 585, 589 (2d Cir.1991) (equitable mortgage created by "lease" following sale/leaseback of land under hotel where on expiration of lengthy lease, title to hotel passes to "lessor" of land for no additional consideration).
 
 
 42
 In the instant transaction, Dababneh retained all title to the property after the lease expired. He alleges no unusually favorable terms for the transfer of the property back to the seller (who became the lessee) at the lease's expiration, and the transaction specifically contemplates that Dababneh might sell or encumber the property himself. Following Moncor's insolvency and breach of the payment terms, Dababneh has, in his own words, "attempted to lease the foregoing described properties to another tenant." See Exhibit C to the Complaint at 9 ("Lease"). He makes no claim that the property is not now his, or that he paid more than the fair market value for the property as some type of secured "loan." Finally, the Lease specifies that "this Lease incorporates all the agreements, covenants, and understandings between the parties[.]" Lease at 14 (emphasis added). In the absence of ambiguity in the document, the panel is constrained to rely on the four corners of the writing pleaded by appellant Dababneh and attached to his Complaint.
 
 
 43
 The First Amended Complaint asserts that the transaction "was a single, complex financing transaction, and not merely an executory lease." I R.Doc. 25 at p 12. Yet, Dababneh does not further define this "complex financing transaction." Even under the favorable standard for reviewing motions to dismiss which applies to Dababneh's appeal, the panel does not deem this language to require treating this transaction as something other than a lease in light of his pleadings and the documents attached to Dababneh's complaint; nor does such an allegation in these circumstances create an issue of fact. First, we note that a lease would be an asset of Moncor Bank and the documents at issue here makes no reference to a "complex financing transaction." Thus, Dababneh implies there was a side agreement which contradicts the face of the "Lease" document. Dababneh, however, would be estopped from asserting this argument against FDIC-R and FDIC-C by D'Oench, Duhme & Co., Inc. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and 12 U.S.C. § 1823(e) (1950), because he does not allege that any documentary support in Moncor's records exists for this side agreement.
 
 
 44
 Moreover, the conclusory and undefined averment of a "complex financing transaction" is insufficient to overbear Dababneh's own characterization of this transaction in his pleadings and briefs as a "sale/leaseback," see I R.Doc. 25 at pp 6, 8, 9, 12-15, with repeated references to the rights and duties created by this "Lease," id. at pp 6, 7, 10, 11, 16, and to the roles the parties played "as lessor," id. at p 18 (erroneously numbered "14") and "lessee," id. at p 16. Whether the lease was actually part of some other undefined "financing transaction" or not, the loss that Dababneh asserts against the FDIC is for payments which would have been due in the future under a lease. The lease of February 29, 1984, contains provisions in Title 5 for "rents" which are common provisions for monthly payments to the Lessor on this "Net, Net, Net Lease" (Title 29). There is one lien provision in Title 6 for sums due being a lien on "any and all goods, chattels and other personal properties belonging to Lessee and located upon the premises." The damages sought are sufficiently like payments for "rent" to fall within the common law rule applied in the opinion.[1] As noted in the opinion, a provable claim must be "due and owing at the time of the declaration of insolvency." Op. at 434 (quoting Kennedy v. Boston-Continental Nat'l Bank, 84 F.2d 592, 596 (1st Cir.1936)). Dababneh does not, and cannot, show that under the terms of this agreement any amount was "due and owing" when Moncor closed. Thus, his claim is unprovable, regardless of how the agreement is characterized.
 
 
 45
 In all relevant respects apparent in the record, the transaction has been called and treated like a lease. The petition does not persuade the panel that it was error to accord the transaction the same treatment in the opinion. It was not improper or unfair for the panel to consider and apply the common law rule barring recovery for future rents since FDIC liability in any capacity would be subject to that rule. Accordingly, the panel finds no merit in Dababneh's petition and the request for rehearing by the panel is DENIED.
 
 
 46
 (2) In accordance with Rule 35(b), Federal Rules of Appellate Procedure, the suggestion for rehearing en banc was transmitted to the panel and all of the judges of the court who are in regular active service. No member of the panel and no judge in regular active service on the court having requested that the court be polled on rehearing en banc, Rule 35, Federal Rules of Appellate Procedure, the suggestion for rehearing en banc is DENIED.
 
 
 
 *
 The Honorable J. Smith Henley, Senior United States Circuit Judge of the Eighth Circuit, sitting by designation
 
 
 [1]
 In his complaint, Dababneh claims damages of $2,679,880 in discounted lost profits on future rent under the unexpired original lease term, including more than $250,000 for remodeling which was necessary to relet the Annex portion of the property not leased by United under the new lease
 
 
 [2]
 The FDIC-C also asserted lack of subject matter jurisdiction. On appeal, however, the FDIC-C does not press this argument; rather, it contends that Dababneh's claim is "unripe" or, alternatively, that his claim is barred by sovereign immunity. Thus, we will not directly address the subject matter jurisdiction issue other than to note, in passing, our earlier observation that Congress, through 12 U.S.C. § 1819 (Fourth), has "provided federal subject matter jurisdiction for cases involving the FDIC." Federal Deposit Ins. Corp. v. Bank of Boulder, 911 F.2d 1466, 1471 (10th Cir.1990) (en banc), cert. denied, --- U.S. ----, 111 S.Ct. 1103, 113 L.Ed.2d 213 (1991). Whether, in fact, the district court might have erred on this question is mooted by our disposition in the remainder of this opinion. See, e.g., Bath v. Bushkin, Gaims, Gaines, and Jonas, 913 F.2d 817, 819-20 (10th Cir.1990) (affirming district court's dismissal under erroneous time-bar application on alternative ground of failure to state a claim); Pullman v. Chorney, 712 F.2d 447, 449 (10th Cir.1983) ("When dispositive, indisputable, alternative grounds appear in the record and are raised on appeal, an appellate court may rely on them to sustain the judgment of the court below.")
 
 
 [3]
 Section 91 reads in relevant part:
 All transfers of ... evidences of debt owing to any national banking association, or of deposits to its credit; ... all deposits of money, bullion, or other valuable thing for its use; or for the use of any of its shareholders or creditors; and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, made with a view to ... the preference of one creditor to another, ... shall be utterly null and void[.]
 Section 194 reads in relevant part:
 From time to time, ..., the comptroller shall make a ratable dividend of the money so paid over to him by such receiver on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction[.]
 
 
 [4]
 During the pendency of this appeal, FDIC-R and FDIC-C amended the "Contract of Sale" portion of the P & A to permit a "pro rata distribution" to unassumed creditors of the liquidated value of Moncor assets transferred to FDIC-C, augmented by the premium paid by United. See First Amended Contract of Sale, Answer Brief, Attachment No. 8, para. 2.3. Defendant argues that this change in the facts moots Dababneh's claim. We disagree. Nothing in the amended contract would prevent a subsequent unilateral rescission of this distribution. More importantly, Dababneh seeks a 100% rate of compensation for his claim, dictated by § 91 and § 194, to accord him "equal" treatment with the assumed creditors. The amended contract does not purport to establish any specified percentage basis of compensation in its distribution
 
 
 [5]
 Because we hold that Dababneh's claim for future rents against FDIC-R is unprovable, we need not decide, and accordingly do not decide, whether derivative liability for such damages could be asserted against FDIC-C
 
 
 [6]
 Dababneh asserts that the district court's denial of FDIC-R's motion to dismiss for failure to state a claim was an adjudication of the "provability" of his claim for purposes of § 194. See Opening Brief at 5; Reply Brief at 16. Since FDIC-R never appealed this ruling, he argues, this Court must assume the "provability" of the claim and address the remaining merits. We disagree
 A ruling denying a motion to dismiss is interlocutory and subject to revision by the district court before a final judgment is entered. Orders denying motions to dismiss are generally not immediately appealable. See, e.g., Van Cauwenberghe v. Biard, 486 U.S. 517, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988) (denial of motions to dismiss not appealable under 28 U.S.C. § 1291); John E. Burns Drilling v. Central Bank of Denver, 739 F.2d 1489, 1491 (10th Cir.1984) ("the denial of a motion to dismiss is not a 'final decision' "); Morrison-Knudsen Co., Inc. v. CHG Int'l, Inc., 811 F.2d 1209, 1214 (9th Cir.1987) (denial of motion to dismiss not appealable under receivership provision of 28 U.S.C. § 1292(a)(2)). Dababneh argues further that the ruling denying the motion to dismiss should be treated as a denial of summary judgment since the judge may have considered an affidavit outside the pleadings in making his ruling. Again, such a denial of a motion for summary judgment is interlocutory and subject to revision, and is not generally appealable. See Petrini v. Howard, 918 F.2d 1482, 1483 n. 3 (10th Cir.1990).
 The record shows no actual expression of a ruling by the district court on the provability issue. However, the argument that Dababneh's claim is not provable is urged as a basis for affirmance of the dismissal of the amended complaint. We are satisfied that the issue is properly before us and will consider its merits.
 
 
 [7]
 By supplemental briefs, Dababneh argues against the retroactive application of FIRREA to pending cases, whereas FDIC-C favors immediate application, although both argue only in the context of FIRREA's changes to the FDIC's valuation of claims, codified at 12 U.S.C. § 1821(i). However, because the determinative issue in this case is the "provability" of Dababneh's claim for future rents, our analysis focuses on § 1821(e) which specifically deals with receiver disaffirmance of leases
 
 
 [8]
 Retroactivity analysis has become unusually complex in the absence of affirmative guidance from the United States Supreme Court. Compare Bradley v. Richmond School Board, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974) ("[a] court is to apply the law in effect at the time it renders its decision") with Bowen v. Georgetown University Hospital, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) ("congressional enactments ... will not be construed to have retroactive effect"); see also Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827, 110 S.Ct. 1570, 1579, 108 L.Ed.2d 842 (1990) (Scalia, J., concurring) (arguing that Bowen and Bradley cannot be reconciled); DeVargas v. Mason & Hangler-Silas Mason Co., Inc., 911 F.2d 1377, 1388-93 (10th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991) (purporting to resolve this "irreconcilable contradiction")
 
 
 [9]
 As mentioned supra, Part II, only the FDIC-R, on behalf of the comptroller, is empowered by § 194 to ratably distribute receivership assets. Thus, it is FDIC-R that allegedly conducted the wrongful preference asserted here. FDIC-C is a separate entity from FDIC-R, see, e.g., Urbanizadora Villalba, Inc. v. Banco y Agencia de Financiamiento de La Vivienda de Puerto Rico, 845 F.2d 1 (1st Cir.1988) (explaining the separate roles of, and remedies available from, FDIC-C and FDIC-R, respectively), and as such, Dababneh's theory of joint liability is based on a claim that FDIC-C is derivatively liable for FDIC-R's alleged wrong
 
 
 [10]
 The court stated that "[h]ad the lease contained a covenant that insolvency shall be a breach of the lease and thereupon, without any further action by the lessor, the lease shall terminate and the lessor be entitled forthwith to damages measured, ..., no doubt [then] a claim would arise and be matured[.]" Id. at 597. Compare William Filene's Sons Co. v. Weed, 245 U.S. 597, 601-02, 38 S.Ct. 211, 213, 62 L.Ed. 497 (1918) (claim under triggered liquidated damages clause in lease is enforceable against a corporation's receiver)
 
 
 [11]
 We are aware that the First Empire court questioned the continued vitality of this "new contract" principle and distinguished that principle from the letter of credit claims then before that court. See id. at 1367-68. Nevertheless, the Ninth Circuit did not disavow the validity of Kennedy, noting that it had followed Kennedy in Argonaut Savings and Loan Ass'n v. FDIC, 392 F.2d 195, 197 (9th Cir.), cert. denied, 393 U.S. 839, 89 S.Ct. 116, 21 L.Ed.2d 110 (1968). Rather, the First Empire court contemplated future application of this principle, concluding that "the holdings of Kennedy and Argonaut should be limited to cases involving leases and loss of future rent[.]" Id. at 1368
 
 
 [12]
 As mentioned, supra n. 4, during the pendency of this appeal, FDIC-R and FDIC-C amended the Contract of Sale apparently in contemplation of some proportional payment to certain unassumed creditors. While our provability discussion stands as a bar to Dababneh's claim for 100% recovery under the ratable distribution requirement, we do not address in this opinion whether he may be entitled to some lesser level of compensation under this voluntary agreement. This amendment was not before the district court and therefore is not before us on appeal from its ruling
 
 
 *
 The Honorable J. Smith Henley, Senior United States Circuit Judge of the Eighth Circuit, sitting by designation
 
 
 [1]
 The instant petition for rehearing and suggestion for rehearing en banc states at p. 3:
 Damages for breach of a 'lease,' when viewed only as lost 'future rent,' have historically been unrecoverable in a suit against the receiver of a closed national bank. Under FIRREA, the current law regulating recovery of damages in national bank receivership cases, damages for the loss of future rent under a 'lease' remain unrecoverable.
 The petition for rehearing and suggestion for rehearing en banc contends, p. 5, that "what Dababneh actually seeks is damages for breach of 'sale/leaseback,' a 'single, complex financing transaction, and not merely an executory lease.' " For reasons stated in the text, on examination of the instruments Dababneh has pleaded and the facts alleged by him, we disagree and remain convinced that in substance he seeks payments in the nature of future rents.